# IN THE SUPREME COURT OF TEXAS

═══════════

No. 17-0395

═══════════

IN RE CAROLINA GARZA, RELATOR

═══════════════════════════════════

ON PETITION FOR WRIT OF MANDAMUS

═══════════════════════════════════

**PER CURIAM**

In this original proceeding, the plaintiff in a personal injury case arising from a traffic accident seeks mandamus relief from trial court discovery sanctions. The trial court judge in Jim Wells County, where the case is pending, denied plaintiff Carolina Garza's motion for protective orders regarding discovery sought from some of Garza's medical providers. The custodians of the medical providers' records are located and were served in Bexar County, are not parties to the lawsuit, and did not participate in the hearing on Garza's motion in Jim Wells County. The custodians subsequently sought, and were granted, protective orders in Bexar County. After the Bexar County district court judge issued his order, the Jim Wells County district court judge granted the defendants' motion to exclude and ordered the following to be excluded from trial as sanctions: (1) testimony by the surgeon who performed spinal surgery on Garza; (2) testimony by employees and agents of the clinic where the surgeon practiced and the hospital where the surgery took place; (3) medical records of the surgeon, his clinic, and the hospital; and (4) charges of the surgeon, his clinic, and the hospital related to Garza.

We conditionally grant relief.

The lawsuit underlying this matter resulted from a collision between a car driven by Garza and a truck owned by UV Logistics, LLC and driven by one of its employees, Alex Rodriguez (collectively, Logistics). After the accident, Garza sought medical treatment in San Antonio at Alamo Neurosurgical Institute (ANI), Dr. Michael Leonard's privately owned practice. On May 2, 2014, Dr. Leonard performed a two-level fusion on Garza's cervical spine at Foundation Surgical Hospital of San Antonio (FSH), where Dr. Leonard is an investor and part owner. Garza was discharged from FSH on May 4, 2014.

Garza sued Logistics in Jim Wells County. In response to requests for disclosure, Garza claimed the amount of her past medical expenses was "more than $320,473.74." That amount included $75,000 for three hours' use of an operating room, $77,705 for supplies used during surgery, and a total hospital bill of over $183,000. Dr. Leonard's charges exceeded $60,000. Garza's disclosures set out that she was claiming damages for

a.  Reasonable medical care and expenses in the past;
b.  Reasonable and necessary medical care and expenses, which will, in all reasonable probability be incurred in the future;
c.  Physical pain and suffering in the past;
d.  Physical pain and suffering, which will, in all reasonable probability be suffered in the future;
e.  Physical impairment and disability in the past;
f.  Physical impairment and disability, which will, in all reasonable probability be suffered in the future;
g.  Loss of wages in the past;
h.  Loss of past and future earning capacity;
i.  Mental anguish in the past;
j.  Mental anguish that will in all reasonable probability be suffered in the future;
k.  Physical disfigurement in the past and, which will, in all reasonable probability, be suffered in the future;
l.  Cost of medical monitoring and prevention in the future;

m.      Exemplary damages; and
n.      Property damage to her vehicle.

Garza designated Dr. Leonard as a testifying expert witness and noticed his deposition. Logistics cross-noticed his deposition and had a subpoena *duces tecum* issued designating several categories of documents that Dr. Leonard was to produce at his deposition. The documents included medical and billing records pertaining to his treatment of Garza, records relating to his billing practices generally, and previous deposition and trial testimony he had given on behalf of patients represented by the Thomas J. Henry law firm which was representing Garza. Logistics acknowledges that the documents subpoenaed, in part, were sought as part of an effort to (1) show that Dr. Leonard, FSH, and ANI were financially connected with the Henry law firm; (2) cast doubt on Dr. Leonard's credibility; and (3) support Logistics' position that the medical procedures performed by Dr. Leonard were not necessary nor were the charges for them reasonable in amount.

Dr. Leonard did not produce the subpoenaed records at his deposition. He testified that he did not receive the subpoena, even though the subpoena's return reflected that it was served on him and someone signed his name acknowledging receipt of it. Dr. Leonard testified that he could not recall details of his previous experiences with the Henry law firm and explained that he employs an office administrator to handle all of his records. Logistics then noticed the depositions of and had subpoenas *duces tecum* issued to Whitney McClain, custodian of records for ANI in Bexar County, and Marianne Palacio, custodian of records for FSH, also located in Bexar County. McClain and Palacio were subpoenaed to produce many of the same documents subpoenaed from, but not produced by, Dr. Leonard. Garza filed a motion to quash in Jim Wells County and Logistics

3

responded with a motion to compel. Following a hearing, the Jim Wells County district court judge ordered the depositions of McClain and Palacio to proceed and directed that the designated documents be produced.

McClain and Palacio, who are not parties to the underlying suit, were served with reissued subpoenas in Bexar County, where they work. They retained counsel and sought protective orders from the 225th District Court of Bexar County, objecting to the order to produce the subpoenaed documents and arguing that the documents contained private, confidential, and privileged business information as well as patient information that could not legally be disclosed under federal regulations. The Bexar County district court judge granted relief.

Logistics responded by moving in Jim Wells County to exclude Dr. Leonard as an expert witness and to exclude recovery of medical expenses from Dr. Leonard, ANI, and FSH. The Jim Wells County district court judge granted Logistics' motion to exclude and issued an order excluding for all purposes (1) Dr. Leonard as an expert witness; (2) expert or fact testimony by all agents, representatives, and employees of ANI and FSH; (3) evidence in any form concerning Garza's charges for her treatment by Dr. Leonard, ANI, and FSH; and (4) all medical records from Dr. Leonard, ANI, and FSH regarding Garza.

Garza sought, but was denied in a non-substantive opinion, mandamus relief from the court of appeals. No. 04-17-00096-CV, 2017 WL 1161169, at *1 (Tex. App.—San Antonio, Mar. 29, 2017).

In seeking relief here, Garza cites *TransAmerican Natural Gas Corp. v. Powell*, where we said,

4

> [A] direct relationship must exist between the offensive conduct and the sanction imposed. This means that a just sanction must be directed against the abuse and toward remedying the prejudice caused the innocent party. *It also means that the sanction should be visited upon the offender.* The trial court must at least attempt to determine whether the offensive conduct is attributable to counsel only, or to the party only, or to both.

811 S.W.2d 913, 917 (Tex. 1991) (emphasis added). She contends there is no evidence of a direct relationship between her conduct and the Bexar County court's quashing of the deposition notices and subpoenas for McClain and Palacio. She says the Jim Wells County court abused its discretion by sanctioning her for lawful actions of nonparties. She argues that the sanctions effectively adjudicated the dispute, were disproportionate to any alleged violations of rules by the nonparties, substantively served as death penalty sanctions as to her case, and rendered any eventual remedy by appeal inadequate.

Logistics counters by arguing that the underlying case is not one in which an expert is required to prove the collision caused Garza's injuries, so the exclusion of one expert does not adjudicate her claim or preclude the presentation of the merits of her case. Logistics contends Garza is not being sanctioned for the actions of nonparties, but rather for her actions in filing a motion to quash in the trial court and then, after that motion was denied, enabling what amounts to violations of the trial court's orders by McClain and Palacio. As to the requested documents at issue, Logistics asserts that no information has been requested for which disclosure would violate federal regulations, or any other privacy laws or interests, because patient identifying information was expressly to be excluded from the subpoenaed documents. Logistics further maintains that the

5

documentation sought was directly related to questions about the necessity of Garza's medical care and the reasonableness of the charges in question.

The Texas Rules of Civil Procedure authorize trial courts to impose sanctions for discovery abuses. TEX. R. CIV. P. 215.3 (permitting a court to impose appropriate sanctions if the court finds a party is abusing the discovery process in seeking, making, or resisting discovery). A sanctions order is subject to review on appeal from the final judgment, TEX. R. CIV. P. 215.3, but, under certain circumstances, is subject to review before final judgment by writ of mandamus. *See TransAmerican*, 811 S.W.2d at 920. But mandamus is both an extraordinary remedy and a discretionary one. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 138 (Tex. 2004). For mandamus to issue, the relator must show both that the trial court's action was an abuse of discretion and appeal is an inadequate remedy. *Id.* at 135–36.

The first requirement for mandamus to issue—an abuse of discretion—is fulfilled where a trial court acts without reference to guiding rules or principles or in an arbitrary or unreasonable manner. *In re Ford Motor Co.*, 165 S.W.3d 315, 317 (Tex. 2005); *Loftin v. Martin*, 776 S.W.2d 145, 146 (Tex. 1989). The second requirement—appeal is an inadequate remedy—is fulfilled where a party's ability to present a viable claim or defense at trial is either completely vitiated or severely compromised. *Walker v. Packer*, 827 S.W.2d 833, 843 (Tex. 1992) (orig. proceeding). No specific definition captures the essence of or circumscribes what comprises an "adequate" remedy; the term is "a proxy for the careful balance of jurisprudential considerations," and its meaning "depends heavily on the circumstances presented." *Prudential*, 148 S.W.3d at 136–37. Sanctions that thwart effective appellate review by precluding a decision on the merits are reviewable by mandamus,

*Braden v. Downey*, 811 S.W.2d 922, 928–29 (Tex. 1991), as are sanctions that have the effect of adjudicating all or a substantial part of a dispute and for which appeal is realistically an inadequate remedy. *See TransAmerican*, 811 S.W.2d at 919 (holding that an eventual remedy by appeal is inadequate where sanctions have the effect of "adjudicating a dispute, whether by striking pleadings, dismissing an action or rendering a default judgment, but which do not result in rendition of an appealable judgment"); *see also Walker*, 827 S.W.2d at 843 (stating that mandamus is available to correct interlocutory sanctions orders that preclude a trial on the merits). Appeal is not an adequate remedy where the practically certain effect of the sanctions will be reversal with the attendant waste of resources and time. *See Prudential*, 148 S.W.3d at 136.

We first consider Garza's assertion that the trial court's sanctions order was arbitrary and unreasonable, and thus an abuse of discretion. She maintains that *she* was not an offending party, even if there were an offending party in light of provisions of the Rules of Civil Procedure and the Bexar County court's ruling. Garza emphasizes that Logistics advances only allegations—not evidence—that Garza and her attorneys were behind Dr. Leonard's failing to produce the subpoenaed records and McClain and Palacio's obtaining relief from the Bexar County district court. And although Dr. Leonard, ANI, and FSH are likely interested in Garza's recovering at least enough to pay their bills, they simply are not parties to the Jim Wells County lawsuit. Garza asserts that McClain and Palacio were lawfully permitted to seek the protection they desired in Bexar County pursuant to rules 176.6(e) and 192.6 of the Texas Rules of Civil Procedure and that the Jim Wells County court abused its discretion by sanctioning her for their lawful actions. We agree.

Rule 176.6(e) provides:

7

(e) *Protective Orders*. A person commanded to appear at a deposition, hearing, or trial, or to produce and permit inspection and copying of designated documents and things, and any other person affected by the subpoena, may move for a protective order under Rule 192.6(b)—before the time specified for compliance—either in the court in which the action is pending or in a district court in the county where the subpoena was served.

TEX. R. CIV. P. 176.6(e). Further, rule 192.6 specifies:

(a) *Motion*. A person from whom discovery is sought, and any other person affected by the discovery request, may move within the time permitted for response to the discovery request for an order protecting that person from the discovery sought. . . .

(b) *Order*. To protect the movant from undue burden, unnecessary expense, harassment, annoyance, or invasion of personal, constitutional, or property rights, the court may make any order in the interest of justice . . . .

TEX. R. CIV. P. 192.6.

While the rules permit potential deponents to seek protection for themselves, Logistics argues that Garza, who is "any other person affected" by the subpoena or the discovery request per the rules, had already sought and been denied protection as to the discovery requested from McClain and Palacio. Logistics asserts that because Garza first invoked jurisdiction in Jim Wells County for determining the necessity of protection, the Jim Wells County court's order could not later be collaterally attacked or overturned in another district court. Additionally, Logistics argues that McClain and Palacio waived objection because they did not seek their own protection following issuance of the initial subpoenas. Garza counters that she and the nonparty deponents enjoy independent rights to seek protection and should not be treated as one entity. And further, McClain and Palacio did not waive objection as the original subpoenas were cancelled and then

8

reissued—McClain and Palacio were first in time to challenge the reissued, live subpoenas. We again agree with Garza.

McClain and Palacio had independent rights to seek protection under the rules of procedure. TEX. R. CIV. P. 176.6(e), 192.6. The rules' use of "and" means that *both* the potential deponent *and* any other person affected by the discovery request are entitled to seek protection by filing motions for protection. *See In re Brookshire Grocery Co.*, 250 S.W.3d 66, 69 (Tex. 2008) (stating that "and" is conjunctive and thus "the words 'and' and 'or' are not interchangeable") (quoting *Bayou Pipeline Corp. v. R.R. Comm'n of Tex.*, 568 S.W.2d 122, 125 (Tex. 1978)). The Jim Wells County court's order did not impose any hardship on or detriment to Dr. Leonard, ANI, FSH, McClain, or Palacio, none of whom were parties to or appeared in the Jim Wells County suit. Nor did it incentivize them to take any action in the Jim Wells County court. Rather, all the effects of the order were visited on Garza, although there is no evidence to support either an express finding, if one had been made, or an implied finding that she (1) orchestrated or aided Dr. Leonard's failure to comply with the subpoena to produce medical and billing records at his deposition, or (2) disregarded the Jim Wells County court's order denying her motion to quash the notices for depositions of McClain and Palacio by taking some action to induce their seeking of relief from the Bexar County court. Indeed, as Garza points out, the Jim Wells County court order contains the words "[Garza] has participated in an effort to usurp the orders of this Court," but those words were stricken through and are not either findings in support of or part of the order.

We conclude that the trial court acted arbitrarily and abused its discretion by imposing sanctions on Garza in the absence of evidence that she was an offender. *See TransAmerican*, 811 S.W.2d at 917.

Having determined that one of the two requirements for mandamus to issue is satisfied, we next address the other: whether Garza has an adequate remedy by appeal. In addressing that requirement, we consider the different categories of evidence the Jim Wells County court ordered to be excluded from trial, beginning with Dr. Leonard's testimony and his records.

Garza argues excluding Dr. Leonard, his testimony, and the ANI medical records from trial is such a severe action that it serves the same purpose as a death penalty sanction. In support of her position, she references *Revco, D.S., Inc. v. Cooper*, where the court of appeals noted,

> In some situations, exclusion of experts may well be only an inconvenience, impairing presentation of a party's case but not precluding trial on the merits. Many cases, indeed, do not require expert testimony at all. Others, however, (medical negligence cases for example) require expert testimony and cannot be tried without it. In those cases, exclusion of experts may well have a death penalty effect.

873 S.W.2d 391, 396–97 (Tex. App.—El Paso 1994, no writ) (holding that a sanction striking an expert served as a death penalty sanction). Garza contends that excluding Dr. Leonard's testimony and the ANI records eliminates, at a minimum, her ability to prove the causation element of her negligence claim.

Logistics counters that the underlying action is not a medical malpractice case and excluding Dr. Leonard, only one treating physician out of Garza's thirty-plus designated healthcare providers, and his records does not effectively adjudicate her claim. That is, even without Dr. Leonard's testimony and his records, Garza has access to evidence and witnesses to present the merits of her

10

case. Per the reasoning in *Revco*, Logistics asserts that the exclusion of Dr. Leonard serves only as an inconvenience to Garza. We agree with Garza.

The exclusion of Dr. Leonard's testimony and records is likely best categorized as less than the death penalty sanction Garza maintains it is, but we do not agree with Logistics that it would amount to no more than an inconvenience. Dr. Leonard treated Garza before her surgery, performed the surgery, and treated her afterwards. Whether she suffered injuries from the collision, whether preexisting conditions contributed to the problems for which Dr. Leonard performed surgery, and how Garza will recover from any injuries and the surgery are, for the most part, what her lawsuit is about. As set out above, her damages claims, for the greatest part, pivot on her personal injury claims. And her personal injury claims pivot on the cause and extent of any injuries she suffered from the collision and her prognosis for the future in light of the surgery. As the surgeon who performed Garza's surgery, Dr. Leonard's testimony will be a substantial part of her case, as will both the medical and billing records of ANI, where he practices. And as Dr. Leonard's deposition makes clear, the ANI records are maintained by employees or agents whose testimony will be necessary to prove up the records so they will be admissible. *See* TEX. R. EVID. 803(6), 902(10).

As to the hospital records and employees, Garza asserts that if the FSH records are excluded, she will almost certainly suffer a directed verdict as to her claim for past hospital expenses and the majority of her damages. That being so, she maintains, the exclusion serves as a death penalty sanction for a significant part of her case. And she says that absent witnesses from FSH, she will have no way to prove up both the medical and billing records and explain their contents to a factfinder.

11

Although we do not agree with Garza entirely, the order excluding the FSH records, employees, and agents puts her in a similar, if not exactly the same, situation as the order regarding Dr. Leonard and the employees and records of ANI. Absent the FSH medical records, she will have difficulty demonstrating the significance of her two-level cervical fusion and the observations of the hospital personnel regarding her immediate postsurgery care. And absent the billing records, she will have no realistic way of proving up over $180,000 of medical bills—unquestionably a significant component of her claim for damages. Further, proving up both types of records and explaining their contents requires the testimony of persons with knowledge of them and familiarity with them, which means the employees or agents of FSH. We conclude, as we did regarding Dr. Leonard and the records and employees of ANI, that if FSH's employees, agents, medical records, and billing records are excluded from trial, then even though Garza's claims might not be completely vitiated, they will be significantly compromised. Thus, an appeal does not provide an adequate remedy as to the order excluding FSH's medical and billing records and FSH employees and agents. *See Walker*, 827 S.W.2d at 843.

Logistics questions the relationship between Dr. Leonard, ANI, FSH, and Garza's attorneys, as well as the amount of medical charges for a three hour surgery and a three day stay in the hospital. Whatever that relationship might be, and regardless of whether a factfinder eventually finds the charges reasonable in amount and necessary for the treatment of injuries from the collision, it remains at this point that the charges for Garza's surgery and hospitalization can only be classified as significant in relation to her claim. While Garza's damages claims would not be completely vitiated by excluding Dr. Leonard, the records of ANI and FSH, and ANI and FSH employees and

12

agents, her claims would be significantly compromised as we have explained above. That is so regardless of the number of and types of expertise of the persons named in Garza's disclosures who might testify on her behalf if Dr. Leonard and ANI and FSH employees and agents were precluded from testifying and the ANI and FSH records were excluded.

Without hearing oral argument, we conclude that Garza is entitled to the mandamus relief she seeks. *See* TEX. R. APP. P. 52.8(c). We are confident that the Jim Wells County district court will set aside the order of March 8, 2017. Our writ of mandamus will issue only in the event the court fails to promptly do so.

**OPINION DELIVERED:** April 13, 2018

13