

# NUMBER 13-22-00103-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

### IN RE NAVNEET KAUR NANUA

### On Petition for Writ of Mandamus.

# MEMORANDUM OPINION

### Before Chief Justice Contreras and Justices Benavides and Tijerina
### Memorandum Opinion by Justice Tijerina[1]

On March 17, 2022, relator Navneet Kaur Nanua filed a petition for writ of mandamus through which she asserts that the trial court erred by failing to timely hold a hearing on Navneet's applications for a protective order under the family code.[2] *See* TEX. FAM. CODE ANN. § 84.001 (providing that "[o]n the filing of an application for a protective

---

[1] *See* TEX. R. APP. P. 52.8(d) ("When denying relief, the court may hand down an opinion but is not required to do so. When granting relief, the court must hand down an opinion as in any other case."); *id.* R. 47.4 (distinguishing opinions and memorandum opinions).

[2] This original proceeding arises from trial court cause number F-3155-21-L in the 464th District Court of Hidalgo County, Texas, and the respondent is the Honorable Joe Ramirez. *See id.* R. 52.2.

order, the court shall set a date and time for the hearing unless a later date is requested by the applicant," and with limited exception, "the court may not set a date later than the 14th day after the date the application is filed"). We conditionally grant the petition for writ of mandamus.

## I.    BACKGROUND

The underlying case is a divorce proceeding between Navneet and Harjap Singh Nanua. The couple have four minor children, who are fifteen, fourteen, nine, and five years of age.

On July 1, 2021, Harjap filed an "Original Petition for Divorce" from Navneet. On July 28, 2021, Navneet filed her "Original Answer" to the petition. Navneet's answer states that a protective order under Title 4 of the Texas Family Code had not been issued, that an application for a protective order under family code § 6.504 was pending, and that a temporary restraining order had been issued against Harjap in California. *See* Tex. Fam. Code Ann. §§ 6.405, 6.504 ("On the motion of a party to a suit for dissolution of a marriage, the court may render a protective order . . . .").

On August 2, 2021, Navneet filed a "Counter-Petition for Divorce and Application for Protection Order." She subsequently filed first and second amended versions of this pleading on August 2, 2021, and August 13, 2021. In each of these pleadings, Navneet requested the issuance of a protective order under § 82.001 of the Texas Family Code for herself and the children against Harjap. *See id.* § 82.001. Navneet asserted that Harjap had a "history or pattern of committing family violence" and asked the court to restrict or limit his possession of their minor children. She stated that on June 10, 2021, Harjap

began verbally abusing her, took out a gun, and began waving it and yelling at her in front of the children. Navneet took the gun from Harjap, whereupon he punched her in the face, "causing profuse bleeding and breaking her nose." She stated that the children "were present and terrified." She retreated to her room with the children and locked the bedroom door, and Harjap left town the next day. According to Navneet, Harjap's parents were present for the altercation, but blamed her for the dispute, and they threatened to take the children to India with them. Navneet ultimately took the children and went to California to stay with her parents. She supported her request for relief with, *inter alia*, a copy of her request for a domestic violence restraining order that she filed in California, her sworn declaration in support of that filing, and medical records regarding her injury. Navneet's declaration largely reiterated her allegations regarding Harjap's abuse, stated Harjap had slapped one of their children, and that his abuse was escalating. According to Navneet's declaration, one of their children had informed a teacher that she was scared of her father. The teacher reported the incident to CPS, but after investigation, no action was taken. Navneet reported that Harjap has four guns, he "has become more aggressive," and she was afraid for the safety of herself and the children. The medical records for Navneet's injury show that she suffered a nondisplaced fracture of the distal nasal bones and include the history of domestic violence as Navneet had alleged in the petition.

On August 11, 2021, the trial court ordered the parties to mediation. That same day, the trial court signed an "Interim Order" allowing Harjap to have daily communication with the children. On August 25, 2021, Harjap filed a "Motion for Contempt or in the

3

Alternative to Clarify Temporary Restraining Orders" based on his contention that Navneet should not have enrolled the children in school in California.

On August 30, 2021, Navneet filed a "Motion for Emergency Hearing." This pleading states, among other things, that: (1) Harjap "was arrested on the charge of Aggravated Assault w/ Deadly Weapon on August 24, 2021"; (2) "[t]here is a current request for a temporary restraining order made by [Navneet] to address the protection of herself and the children"; (3) "[i]t is urgent, based on the above circumstances . . . that [Navneet] get immediate relief and protection of herself [and] the children subject of this suit"; (4) Navneet was requesting "the court to address the California Temporary Restraining Order (Case No. 21D003946 in the Superior Court of California, County of Orange, State of California) currently in effect on the issues of protecting [Navneet] and her children"; and (5) Navneet was "requesting [that the] Protective Order issued by Mission P[olice] D against Harjap . . . be incorporated into [the] divorce case."

On September 1, 2021, Navneet filed a "Third Amended Counter-Petition for Divorce and Application for Protection Order and Notice of Magistrate's Protective Order." This pleading again requests the issuance of a protective order against Harjap, and states that "[a] current restraining order is in effect out of the Orange County, State of California CASE NUMBER: 21D003946, in the Superior Court of California." The Orange County restraining order was issued in favor of Navneet and the children, and prevented Harjap from, inter alia, harassing, attacking, threatening, or contacting them.

On September 2, 2021, and September 3, 2021, the parties executed a mediated settlement agreement which addressed terms of the minor children's contact with Harjap,

4

Harjap's payment of Navneet's medical expenses, spousal support, and some matters of property division.

On September 9, 2021, Harjap filed a "First Amended Motion for Contempt or in the Alternative for the Court to Clarify Temporary Restraining Orders."

On September 13, 2021, Navneet filed a "Motion for Judicial Notice of Minute Order by the Superior Court of California for the County of Orange." In that pleading, it appears that the judges from Texas and California had conferred, concluded that California was an inconvenient forum, and that Texas had jurisdiction over the parties' dispute.

On September 17, 2021, the trial court signed an Agreed Order. This order states that Navneet is hospitalized, requires the children's caregivers to facilitate daily communication with Harjap, prohibits Harjap from discussing Navneet's medical condition or litigation, and states that Harjap agrees to provide necessary medical financial assistance.[3]

On September 17, 2021, Harjap filed a "Motion for Contempt for Continued Violation of Electronic Access to the Children." He alleged that the children's caregivers had not been providing him with telephonic access to the children and that text messages that he had received from them were fake.

On October 6, 2021, Navneet filed a motion requesting the trial court to set hearings on her pending motions. According to Navneet's motion, the magistrate's

---

[3] Navneet was diagnosed with Stage IV breast cancer during the pendency of these proceedings and is undergoing medical treatment in California.

protective order would expire on November 23, 2021, and she asked to incorporate it into the divorce case and requested the court to set hearings on, among other matters, her application for protective order.

On November 15, 2021, Navneet filed a "Motion to Extend Magistrate's Order of Emergency Protection." Alternatively, she asked the trial court to issue its own order of protection. On or about November 16, 2021, Navneet filed a motion to substitute counsel.

On November 30, 2021, the trial court held a hearing on Harjap's "First Amended Motion for Contempt or in the Alternative for the Court to Clarify Temporary Restraining Order." The hearing was continued until January 11, 2022. At that hearing, Navneet's attorney informed the court that Navneet was attempting to obtain a protective order through the district attorney's office. Navneet testified, *inter alia*, that the California court had issued a restraining order against Harjap that was dismissed or had expired, and that the magistrate's order of protection in Mission also expired. She agreed that there was currently no protective order in place against Harjap. Navneet acknowledged that several years ago a teacher filed a CPS report regarding family violence committed by Harjap that CPS investigated and eventually ruled out. Navneet testified that she had not filed a complaint against her husband for family violence because she was afraid of him. According to Navneet, the children choose not to speak to their father because they are "scared of him" because "[h]e's hit them," "abused them," and "verbally abused them." Navneet repeated that the children are scared of Harjap and do not want to speak to him. She expressly testified Harjap has "an anger problem." Navneet related that on one

occasion, Harjap was angry with the kids and made them repeatedly state that "their father was dead for them" and that they "killed" him.

Navneet testified that Harjap has displayed a gun in front of the children on multiple occasions, which scared them. She testified that he had verbally abused her in front of the children on multiple occasions, that "they saw him punch me, they saw the gun come out." She said that he has "choked" her before and "he's threatened to kill me." "He pulled me against the wall[,] and he choked me and said that he was going to kill me." She also testified "[h]e bit me on my face." She testified that "[h]e's thrown me on the floor, on the ground." Navneet asserted that "[h]e's threatened to kill me before and put a gun to my head." She testified that the children have "witnessed him verbally abuse [her] on a daily basis." With regard to the incident that precipitated the split between the couple, Navneet testified that "[she] tried to take the gun away from him," and "he punched [her] and fractured [her] nose." According to Navneet, Harjap hit her with a closed fist.

Counsel asked Navneet if Harjap's physical attacks were "the problem" that the children were having with him. In response, Navneet testified that, for instance, their oldest daughter twisted her ankle in 2019 on a skiing trip, was screaming in pain and crying while sleeping, but Harjap told their daughter that it was just sprained, made her walk on it and pull a toboggan board, and would not let her sit. Navneet ultimately took her for an x-ray, which revealed that her ankle was fractured in three places.

Navneet testified that she needed to ensure the safety of her children because Harjap was both verbally and physically abusive towards them. She testified that he has hit them, pulled one daughter by the hair, and slapped them.

7

Ultimately, the parties were unable to finish the hearing in the time allotted and the hearing was set to be continued on a later date. Navneet's attorney stated, "Your Honor, and just while you think about resetting this, I'm going to ask for leave and file a request for protective order. I'm going to take it out [of] the DA Office's hands." Harjap's counsel announced that there was already a motion for protection on file, and Navneet's attorney stated that he was going to ask the court to set it on the reset date. The judge agreed that all the motions, including the motion for contempt, motion for immediate return, motion to compel, motion for temporary orders, and amended motion for protection would all be set on the same day.

At the conclusion of the hearing, the trial court ordered that Harjap would be allowed visitation with the children and ordered the children to travel to Texas to see him. Navneet's counsel objected and asked the trial court to hear the request for protective order first. Instead, the children visited Harjap in Texas as ordered by the court.

On February 15, 2022, the trial court resumed the hearing on Harjap's motion for contempt. Navneet's counsel informed the court that his witnesses were present to testify regarding her request for a protective order. However, at the inception of the hearing, the trial court held in-chambers conferences separately with each of the minor children. Their conversations were transcribed and are a part of the record.

The fifteen-year-old child told the judge that the last visit was "bad," that Harjap waved a gun in front of the family, and "he punched mom in the nose." She stated that Harjap "used to hit us," he hit one of her sisters until she "was turning purple," and he forced her other sister to eat even when full. She stated that Harjap would "vent his anger

8

out on [Navneet] and hit her, and he wouldn't talk to us for weeks." On one occasion, Harjap was angry with the children and "he made us say that our father is dead for us and we killed our father." She stated that he was "mad all the time." With regard to the recent trip to Texas, she advised the trial court that her five-year old brother threw up in the car and Harjap would not stop to allow the child to change, so he sat in his vomit for "over an hour."

The fourteen-year-old confirmed that Harjap made their brother sit in his vomit for an hour on the recent trip to Texas. When the trial court asked if she wanted to see her father occasionally, she answered in the negative on two different occasions and explained that "he used to hit us" when they were living in Texas, and she was "scared he might hit us again." She stated that she fractured her foot, but Harjap thought she was "faking," became angry, and made her walk on it. She stated that he hit her until she turned purple, then recounted an additional incident when Harjap hit her sister. She stated that Harjap failed to properly supervise her five-year-old brother outside, and her brother had fallen into a pond on more than one occasion. She stated that Harjap got mad "all the time" and "he would hit us for the littlest thing." She stated that "he's hit us many, many times." She denied that he was "spanking" her or her siblings, and stated that he was actually hitting them, as for instance, on her face. The trial court again asked if she wished to see her father, and she responded with "No, I prefer not [to] see my dad." The trial court attempted to placate the fourteen-year-old, reminding her that at the end of the day, he was still her father; however, the child reiterated, "Yeah, I know that, but I [would] rather not see him." The fourteen-year-old also felt it was important to share with the judge

9

that "[o]ne time [her] dogs weren't listening and [Harjap] kicked them." The trial court concluded his visit with the fourteen-year-old by attempting to confirm that, despite everything he had been told, "everything was ok" for the children's last two visits with their father.

The nine-year old told the judge that she does not like to visit her father "[bec]ause we're scared of him" and "[b]ecause he might hit us again." She stated she did not want to come back and visit her father.

The five-year old told the judge that he likes Texas and wants to visit again.

The hearing on contempt resumed at the conclusion of the child conferences. Navneet's counsel informed the court that there had never been a hearing on Navneet's applications for a protective order, repeatedly requested the court to hold a hearing on her applications, advised the court that his witnesses were present to testify regarding her request for protection, noted that a finding of domestic violence would affect other issues in the case such as visitation and spousal maintenance, and repeatedly objected to the trial court's failure to hold a hearing on the request for a protective order.

Instead of hearing the motion for protective order, however, the judge informed the parties that he had concluded that the predicate order on which Harjap's motion for contempt was based, requiring Navneet to make the children available for telephone calls, was not specific enough to form the basis of a contempt order. The trial court thus asked the parties to produce new interim orders regarding child contact. The court stated his intent to appoint an ad litem and to require the parties to mediate.

10

The trial court further stated that, having conferred with the children, he was ordering them to have visitation with Harjap for spring break. Upon repeated requests by Navneet's counsel to hear the motion for protective order, the trial court said he would "probably consider it later . . . ." However, the trial court also suggested that Navneet obtain a protective order in California, and questioned whether such a hearing was even necessary: "[H]ow is she at risk of any future family violence if they're not living together and they're actually living in separate states?" The trial court nevertheless stated he was not denying Navneet's right to have a hearing on the protective order. Navneet's attorney requested the trial court to hold a hearing on her applications for a protective order before spring break, advising the trial court that Harjap would not be entitled to a visit if there were to be a domestic violence finding. The trial court stated that the children did not have problems visiting Harjap on two previous occasions, the court was not concerned that the visit would be "an issue for the children," and buttressed his conclusion by referencing his meetings with the children. Navneet's counsel again objected and advised that "[t]he court is allowing visits without a hearing concerning the issue of family violence and the protective order."

The trial court offered the protective order hearing to be set on April 12, 2022, when a discovery motion was set to be heard. Navneet's witnesses for the protective order, Romy Villarreal-Cepeda, Julia Patricia Lara, Monica Marilu Alvarez, Vicky Alvarez, and Investigator Lara (an officer with Mission PD), agreed to return to court to provide testimony at that time.

On March 15, 2022, the trial court signed "Interim Orders on Children's Travel to Texas for Spring Break." This order states that on February 15, 2022, the court had conducted the second part of a hearing on Harjap's motion for enforcement by contempt that would resume on April 12, 2022. This order required the children to travel to Texas to spend spring break with Harjap.

This original proceeding ensued on March 17, 2022. By one issue, Navneet contends that the trial court erred by failing to timely hold a hearing on her applications for protective order. She asserts that the trial court lacks discretion to refuse to hold a hearing and rule, and she requests that we direct the trial court to do so. Navneet further requested emergency relief to stay the trial court's "Interim Orders on Children's Travel to Texas for Spring Break," signed on March 15, 2022.

This Court, after receiving and reviewing Harjap's response to Navneet's request for emergency relief, granted the request for emergency relief and ordered the trial court's "Interim Orders on Children's Travel to Texas for Spring Break," signed on March 15, 2022, to be stayed pending further order of this Court, or until this case is finally decided. *See* TEX. R. APP. P. 52.10(b). This Court requested and received a response to the petition for writ of mandamus from Harjap, and a reply thereto from Navneet.

## II.  STANDARD OF REVIEW

Mandamus is an extraordinary and discretionary remedy. *See In re Allstate Indem. Co.*, 622 S.W.3d 870, 883 (Tex. 2021) (orig. proceeding); *In re Garza*, 544 S.W.3d 836, 840 (Tex. 2018) (orig. proceeding) (per curiam); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 138 (Tex. 2004) (orig. proceeding). The relator must show that (1) the trial

12

court abused its discretion, and (2) the relator lacks an adequate remedy on appeal. *In re USAA Gen. Indem. Co.*, 624 S.W.3d 782, 787 (Tex. 2021) (orig. proceeding); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 135–36; *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex. 1992) (orig. proceeding).

### III. FAMILY VIOLENCE PROTECTIVE ORDERS

Title 4 of the Texas Family Code, entitled "Protective Orders and Family Violence," "establishes the procedure for the issuance and enforcement of family violence protective orders, which includes protective orders sought by a member or former member of a household against another member of the household." *Johnson v. Simmons*, 597 S.W.3d 538, 541 (Tex. App.—Fort Worth 2020, pet. denied). The purpose of this statutory scheme is to:

> provide protection and temporary shelter . . . for victims of family violence and members of their family . . . [and] to reduce the high incidence of deaths and injuries sustained by law enforcement officers in handling family disturbances and to aid law enforcement officers in protecting victims of family violence from serious or fatal injuries.

Act of April 19, 1979, 66th Leg., R.S., ch. 98, § 1, 1979 Tex. Gen. Laws 182, 182 (repealed and reenacted 1997); *see Johnson*, 597 S.W.3d at 541–42; *Roper v. Jolliffe*, 493 S.W.3d 624, 634 (Tex. App.—Dallas 2015, pet. denied). "The purpose of the statute is to provide an expedited procedure for victims of domestic violence; the purpose is not to correct past wrongs or establish liability but to give immediate protection to the applicant." *Roper*, 493 S.W.3d at 634. "Title 4 is remedial in nature and should be broadly construed to 'effectuate its humanitarian and preventive purposes.'" *Id.* (quoting *Boyd v. Palmore*, 425 S.W.3d 425, 430 (Tex. App.—Houston [1st Dist.] 2011, no pet.)).

"Because of the nature of the relief anticipated and the danger that it seeks to avoid, Title 4 utilizes a 'very abbreviated procedure.'" *Johnson*, 597 S.W.3d at 542 (quoting *Martinez v. Martinez*, 52 S.W.3d 429, 432 (Tex. App.—Fort Worth 2001, pet. denied) (op. on reh'g)). In this regard, the family code provides specific guidelines for the timing of a hearing on an application for protective order:

> (a)      On the filing of an application for a protective order, the court shall set a date and time for the hearing unless a later date is requested by the applicant. Except as provided by Section 84.002, the court may not set a date later than the 14th day after the date the application is filed.
>
> (b)      The court may not delay a hearing on an application in order to consolidate it with a hearing on a subsequently filed application.

TEX. FAM. CODE ANN. § 84.001. Thus, "the trial court is required to hold a hearing on an application for a family violence protective order within fourteen days of the filing of the application." *Johnson*, 597 S.W.3d at 542; *see* TEX. FAM. CODE ANN. § 84.001. The "short deadline recognizes the need for prompt resolution of the applicant's request." *Johnson*, 597 S.W.3d at 542 (quoting *St. Germain v. St. Germain*, No. 14-14-00341-CV, 2015 WL 4930588, at *5 (Tex. App.—Houston [14th Dist.] Aug. 18, 2015, no pet.) (mem. op.)). The statute, for example, expressly prohibits the court from delaying a hearing on the application to hold consolidated hearings with subsequent applications. *See* TEX. FAM. CODE ANN. § 84.001(a).

The family code contains several provisions allowing for the modification of this fourteen-day deadline under specific circumstances. For example, the applicant may request a later date. *See id.* In counties with a large population or in a judicial district composed of more than one county, the prosecuting attorney may request an extended

14

time to hold a hearing not later than twenty days after the application is filed or the request is made to reschedule the hearing. *See id.* § 84.002. The applicant may request to reschedule the hearing if the respondent failed to receive notice, in which case the hearing shall be no later than fourteen days after the date that the request is made. *Id.* § 84.003. The respondent may request to reschedule the hearing for insufficient notice if notice is received within forty-eight hours of the hearing, in which case the hearing shall be rescheduled not later than fourteen days after the date set for the hearing. *Id.* § 84.004. Finally, although legislative continuances are mandatory in other contexts, a trial court has discretion to grant a legislative continuance of a hearing on a protective order under this section. *Id.* § 84.005; *see id.* § 30.003.

In the absence of one of these specific circumstances, the trial court is required to hold a hearing within the statutorily mandated timeframe, and its failure to do so is an abuse of discretion. *See id.* § 84.001; *see also In re Stellpflug*, No. 04-03-00876-CV, 2003 WL 22804035, at *1 (Tex. App.—San Antonio Nov. 26, 2003, orig. proceeding) (per curiam) (mem. op.) (concluding that the trial court abused its discretion by failing to hold the statutorily required hearings); *Retzlaff v. Mendieta-Morales*, No. 01-98-01060-CV, 1999 WL 191574, at *1 (Tex. App.—Houston [1st Dist.] Apr. 8, 1999, no pet.) (mem. op.) (concluding that the trial court erred by failing to comply with the mandatory provisions regarding hearings and notice on family law protective orders).

## IV. ANALYSIS

By one issue, Navneet contends that the trial court abused its discretion by failing to timely hold a hearing on her applications for a protective order. She requests that we

15

direct the trial court to consider and rule on her applications for a protective order prior to granting Harjap additional, unsupervised visitations with the children. In contrast, Harjap asserts that it is not an abuse of discretion for the trial court to grant unsupervised visitation before a hearing is held on an application for protective order; that Navneet's attorney agreed to appear at the protective order hearing set by the trial court for April 12, 2022; that even if the trial court grants an application for protective order it does not mean the suspension of visitation;[4] and there is no emergency to hold a protective order hearing without the presence of the threat of family violence. He alleges that the "time frame provided in the statute is advisory and not mandatory and the statute does not mention a penalty associated with the failure to comply."

In the instant case, Navneet filed multiple applications for a protective order. Her applications were supported by evidence indicating that Harjap had engaged in domestic violence towards Navneet, including breaking her nose. Nevertheless, the trial court failed to timely schedule a hearing on her applications and heard other pending motions instead. Moreover, and inexplicably, the trial court refused to hear Navneet's request for a protective order even after Navneet expressly testified in court that Harjap committed domestic violence, that he broke her nose, hit and slapped the children, and displayed a gun in a threatening manner, and the children expressly informed the trial court that Harjap hit their mother, brandished a gun, hit and slapped them on multiple occasions, made one child walk on a broken foot, and made one child sit in his own vomit for an hour.

---

[4] We note that Navneet's requests for a protective order were made on her behalf and that of the minor children.

It is abundantly clear that the purpose of Texas Family Code § 84.001 is to provide "an expedited procedure for victims of domestic violence" and "to give immediate protection to the applicant." *Roper*, 493 S.W.3d at 634. In order to accomplish this remedial, humanitarian, and preventative purpose, the statute requires prompt resolution of motions for protection filed under this section. *See Johnson*, 597 S.W.3d at 542; *Roper*, 493 S.W.3d at 634; *Martinez*, 52 S.W.3d at 432. With limited exceptions which are not applicable here, under the statute, "the court may not set a date later than the 14th day after the date the application is filed." TEX. FAM. CODE ANN. § 84.001.

We note that Harjap contends that the trial court acted within its discretion by failing to rule on the motions for protective order because, among other matters, there is no "threat of family violence." Harjap's allegations stand in stark contrast to the record before the Court, but regardless, the family code sets no requirement that Navneet prove her allegations of family violence before she has the right to be heard on them. *See id.* Harjap further asserts that the "time frame provided in the statute is advisory and not mandatory and the statute does not mention a penalty associated with the failure to comply." We have reviewed the statutory time frame and the exceptions provided by statute, and we cannot conclude that the statute is advisory in nature given the express language of the statute. *See id.*; *see also In re Stellpflug*, 2003 WL 22804035, at *1; *Retzlaff*, 1999 WL 191574, at *1. Harjap further asserts that Navneet has agreed to hold a protective order hearing concomitantly with pending discovery issues; however, Navneet has repeatedly objected to proceeding without first considering her applications for protective order. Finally, Harjap asserts that there is no "penalty" for failing to comply with the statutory

deadline, citing *Barbee v. Barbee*, No. 12-09-00151-CV, 2010 WL 4132766, at *1 (Tex. App.—Tyler Oct. 20, 2010, no pet.) (mem. op.). However, in *Barbee*, the appellant argued that the protective order issued by the court was void or voidable because the trial court issued the protective order six months after the application was filed, rather than within the fourteen days contemplated by the statute. *See id.* at *6. The court determined that the "purpose of the statute would not be served if noncompliance [with the statutory timeline] resulted in dismissal for want of jurisdiction." *Id.* Harjap's citation to *Barbee* is inapposite insofar as here, we are considering the trial court's failure to hold a hearing on a motion for protective order rather than the efficacy of a protective order issued after the statutory deadline. *See id.*

We conclude that the trial court erred in failing to timely hear and rule on Navneet's motions for protective order. We further conclude that she lacks an adequate remedy by appeal to address this error. We sustain the sole issue presented in this original proceeding.

## V.  CONCLUSION

The Court, having examined and fully considered the petition for writ of mandamus, the response, the reply, and the applicable law, is of the opinion that Navneet has met her burden to obtain relief. Accordingly, we lift the stay previously imposed in this case. *See* TEX. R. APP. P. 52.10(b). We conditionally grant the petition for writ of mandamus, and we direct the trial court to consider and rule on Navneet's applications for protective order within ten days and prior to entertaining any other matters in the case. Our writ will issue only if the trial court fails to comply.

18

Given our resolution of this original proceeding, the Court denies Harjap's "Motion to Clarify Stay Order" and Harjap's "Motion for Sanctions Pursuant to Chapter 10 of the Texas Civil Practice and Remedies Code, and Rules 45 and 52.11 of the Texas Rules of Appellate Procedure."

JAIME TIJERINA
Justice

Delivered and filed on the
6th day of June, 2022.