**Petition for Writ of Mandamus Conditionally Granted and Memorandum Opinion filed February 16, 2023.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-22-00568-CV

---

### IN RE TRANSOCEAN OFFSHORE DEEPWATER DRILLING, INC., Relator

---

**ORIGINAL PROCEEDING
WRIT OF MANDAMUS
269th District Court
Harris County, Texas
Trial Court Cause No. 2021-01455**

---

## MEMORANDUM OPINION

On August 2, 2022, relator Transocean Offshore Deepwater Drilling, Inc. filed a petition for writ of mandamus in this court. *See* Tex. Gov't Code Ann. § 22.221; *see also* Tex. R. App. P. 52. In the petition, relator asks this court to compel the Honorable Cory Sepolio, presiding judge of the 269th District Court of Harris County, to set aside his July 18, 2022 order denying relator's motion to compel an independent neuropsychological examination of real party in interest

Daman Roy and enter an order compelling Roy to submit to such examination. We conditionally grant the petition.

## BACKGROUND

Transocean employed Daman Roy as a seaman and member of the crew of the drillship, *The Inspiration*. On September 5, 2020, Roy was working on *The Inspiration* as roustabout when he was struck in the face by a crane hook. On January 11, 2021, Roy sued Transocean for damages sustained as a result of the incident.

On May 4, 2022, Roy advised Transocean that Roy had "recently under[gone] neuropsychological testing in the Houston area" and "plan[ned] to undergo a brain MRI." On June 30, 2022, Transocean requested that Roy undergo a neuropsychological examination with Dr. Richard Temple, a neuropsychologist. After Roy refused to submit to an examination with Dr. Temple, Transocean, on July 6, 2022, filed a motion to compel an independent neuropsychological examination of Roy. On July 18, 2022, the trial court signed the order denying Transocean's motion to compel.

## STANDARD OF REVIEW

To be entitled to mandamus relief, Transocean must establish that (1) the trial court abused its discretion; and (2) no adequate remedy by appeal exists. *See In re Christianson Air Conditioning & Plumbing, LLC*, 639 S.W.3d 671, 681 (Tex. 2022). A trial court clearly abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law or if it clearly fails to analyze the law correctly or apply the law correctly to the facts. *In re H.E.B.*

2

*Grocery Co., L.P.*, 492 S.W.3d 300, 302–03 (Tex. 2016) (orig. proceeding) (per curiam); *In re Cerberus Capital Mgmt. L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding) (per curiam). The relator must establish that the trial court could reasonably have reached only one decision. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding).

Courts are to assess the adequacy of an appellate remedy by balancing the benefits of mandamus review against the detriments. *In re Team Rocket, L.P.*, 256 S.W.3d 257, 262 (Tex. 2008) (orig. proceeding). In evaluating benefits and detriments, we consider whether mandamus will preserve important substantive and procedural rights from impairment or loss. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 136 (Tex. 2005) (orig. proceeding). Because this balancing depends in large measure on the circumstances presented, courts look to principles rather than simple rules that treat cases as categories. *In re McAllen Med. Ctr., Inc.*, 275 S.W.3d 458, 464 (Tex. 2008) (orig. proceeding). Whether an appeal amounts to an adequate remedy depends heavily on the circumstances. *In re Garza*, 544 S.W.3d 836, 840 (Tex. 2018) (orig. proceeding) (per curiam).

## ABUSE OF DISCRETION

## I. Timeliness of the Motion to Compel

Roy suggests that Transocean unreasonably delayed seeking the independent neurological examination. Roy argues that Transocean Relator waited until June 30, 2022—31 days before Transocean's deadline to designate its experts, before requesting any examination by a neuropsychologist. Roy asserts that Transocean was aware of his head injuries in October 2020, prior to the filing of lawsuit on

January 11, 2021. Transocean responds that it was not until May 2022, that it became aware that Roy was being treated for a brain injury and was alleging neurological injuries because of the incident. However, we need not determine when Transocean knew Roy was claiming neurological issues.

A party must move to compel an examination "no later than 30 days before the end of any applicable discovery period." *In re Auburn Creek Ltd. P'ship*, 655 S.W.3d 837, 841 (Tex. 2022) (orig. proceeding) (per curiam) (quoting Tex. R. Civ. P. 204.1(a)). The docket control order set the end of the discovery period as September 2, 2022. Transocean moved to compel the neuropsychological examination on July 6, 2022—58 days before the end of the discovery period. Therefore, Transocean's motion to compel was timely filed. *See id.* (holding that relator met deadline by which to compel examination where relator moved to compel examination more than 30 days before the discovery deadline).

## II. Rule 204.1 Requirements for Examination

Rule 204.1 governs requests for a physical or mental examination of another party. *H.E.B.*, 492 S.W.3d at 303. The trial court may grant a Rule 204.1 motion if the movant establishes that (1) "good cause" exists for the examination, and (2) the mental or physical condition of the party the movant seeks to examine "is in controversy." *Id.* (quoting Tex. R. Civ. P. 204.1(c). These requirements cannot be satisfied "by mere conclusory allegations of the pleadings—nor by mere relevance to the case." *Id.* (quoting *Coates v. Whittington*, 758 S.W.2d 749, 751 (Tex. 1988)). The "good cause" and "in controversy" requirements are necessarily related." *Id.* at 304.

4

## A. Roy's Neuropsychological Condition is in Controversy

Transocean must establish that Roy's neuropsychological condition is in controversy. Tex. R. Civ. P. 204.1(c)(1). On January 6, 2022, Dr. Sasha Iversen prepared a life care plan for Roy, in which she stated that Roy will require future neuropsychological evaluation and treatment. Dr. Irfan Lalani, M.D. saw Roy on April 22, 2022, and ordered an MRI of Roy's brain, which was performed on May 3, 2022. Dr. Lalani also indicated that traumatic brain injury testing would be conducted.

Roy's first amended petition alleges that he suffered extensive, serious, and disabling injuries as a result of being struck by a crane hook. A May 4, 2022 email from Transocean's counsel to Roy's counsel confirmed that they had discussed in a prior phone conversation that Roy had "recently under[gone] neuropsychological testing in the Houston area" and Roy's counsel would provide the name of the physician or group who had performed the testing, as well as the records. Respective counsel also discussed that Roy "plan[ned] to undergo a brain MRI—details [would] be provided shortly." Furthermore, in a June 1, 2022 email, Roy's counsel advised "that Daman is actively undergoing treatment for his brain and head injuries, including neuro-psych treatment and brain imaging studies, and we w[ill] send you those records upon obtaining a complete set of them." In a June 30, 2022 email, Transocean's counsel additionally confirmed that Roy "intend[ed] to make [his neuropsychological condition] an issue at trial."

We conclude that Roy has put his alleged brain injuries in controversy and therefore Transocean has satisfied the first prong for ordering an independent examination under Rule 204.1(c)(1).

5

**B. Good Cause**

Transocean must also establish good cause for the examination. Tex. R. Civ. P. 204.1(c). The purpose of rule 204.1's good-cause requirement is to balance the movant's right to a fair trial and the other party's right to privacy. *H.E.B.*, 492 S.W.3d at 303. To show good cause, the movant must (1) show that the requested examination is relevant to issues in controversy and will produce or likely lead to relevant evidence, (2) establish a reasonable nexus between the requested examination and the condition in controversy, and (3) demonstrate that the desired information cannot be obtained by less intrusive means. *Auburn Creek Ltd. P'ship*, 655 S.W.3d at 841. We address the three parts of good cause below.

**1. Relevance**

When the existence, extent, and cause of an injury are in controversy, an exam intended to glean information regarding those issues will satisfy the relevance requirement. *Id.* at 841-42. Dr. Temple explained that a "[n]europsychological evaluation" would "determin[e] the presence or absence of neurocognitive and psychological impairments" and "my evaluation would be necessary to independently evaluate the plaintiff's abilities and disabilities and reach independent conclusions about his current level of functioning." As discussed above, Roy's neuropsychological condition is in controversy. Dr. Temple's exam is intended to glean information regarding such condition. Therefore, Transocean has satisfied the relevance requirement.[1]

---

[1] *See Auburn Creek Ltd. P'ship*, 655 S.W.3d at 842 (holding that relators' expert's tests would likely lead to discovery of relevant evidence where relators sought similar opportunity for its expert to evaluate claimed mental injuries and develop facts that might contradict plaintiffs'

## 2. Reasonable Nexus

As to reasonable nexus, Transocean must provide more than conclusory allegations and show more than mere relevance to the case. *Id.* at 842. Rather, there must be evidence that the requested examination "directly relates to the condition in controversy." *Id.* (quoting *H.E.B.*, 492 S.W.3d at 303). Dr. Temple explained that his evaluation would be necessary to independently evaluate Roy's abilities and disabilities and reach independent conclusions about his current level of functioning.

Roy complains that Transocean has failed to identify the tests Dr. Temple intends to perform. Dr. Temple generally described the tests as follows:

> My examination will consist of a standard neuropsychological evaluation, including a clinical interview and administration of standardized tests to measure intellectual ability, academic skills, attention, executive functioning, language, sensorimotor functions, visuospatial skills, learning and memory, and mood and personality functioning. This exam will also include measures of symptom validity and effort to ensure the validity of the obtained results. Daman Roy will be asked to answer questions, manipulate testing objects (e.g., small blocks), and perform some writing and drawing tasks.

Dr. Temple further explained that, because "the reliability and validity of neuropsychological evaluation assumes a naïve examinee," the specific tests should not be predisclosed because it would potentially allow the examinee to prepare for the tests. *See id.* (holding evidence showed reasonable nexus between proposed

---

expert's opinion by conducting battery of tests to evaluate plaintiffs' claims of brain injuries due to carbon-monoxide exposure, including cause, nature, extent, and proper treatment of any injuries); *H.E.B.*, 492 S.W.3d at 303 (explaining that examination of plaintiff was relevant where relator's expert attested that he expected to glean information from examination concerning existence and extent of physical injuries to plaintiff's neck and shoulder and cause of those injuries).

examinations and conditions at issue where defendant's expert testified that neuropsychological exams would assess claimed injuries and identified risk of bias and error if patients were aware of exact tests to be performed). Transocean has established that Dr. Temple's proposed examination is directly related to Roy's condition and, therefore, a reasonable nexus exists between the examination and Roy's condition. *See id.*; *see also H.E.B.*, 492 S.W.3d at 303 (holding examination directly related to condition in controversy where purpose of examination was to determine existence, nature, and extent of plaintiff's injuries sustained on relator's property and condition in controversy was related to fall).

### 3. Less Intrusive Means

Roy asserts that Transocean failed to show the information cannot be obtained by less intrusive means. The movant must demonstrate that the information sought is required to obtain a fair trial and therefore necessitates intrusion upon the privacy of the person to be examined. *Coates*, 758 S.W.2d at 753. The movant must show that the exam would be the least intrusive means of discovering the desired information "in light of the fair trial standard." *Auburn Creek Ltd. P'ship*, 655 S.W.3d at 842 (*quoting In re Offshore Marine Contractors, Inc.*, 496 S.W.3d 796, 800 (Tex. App.—Houston [1st Dist.] 2016, orig. proceeding)). This requirement focuses on the importance of the discovery sought and the ability to find it elsewhere. *Id.* "In particular, courts should consider whether the exam is likely to reveal information necessary to assess the complained-of injuries beyond what could be obtained from reviewing any medical records available to the expert." *Id.*

Dr. Temple stated that "[n]europsychological evaluation is the gold standard in the medical field for determining the presence or absence of neurocognitive and

psychological impairments" and reviewing existing medical records is not sufficient to make such a determination. Dr. Temple further explained that it is necessary to perform his own evaluation of Roy's abilities and disabilities to reach independent conclusions about Roy's current level of functioning. Moreover, the Texas State Board of Examiners of Psychologists mandates that a psychologist provide opinions about an individual's mental state only after conducting an evaluation, which includes an in-person examination of the individual. *See* 22 Tex. Admin. Code § 456.16(c)(5) ("Licensees provide opinions of the psychological characteristics of individuals only after they have conducted an examination of the individuals adequate to support their statements or conclusions."). Transocean's counsel stated in a June 30, 2022 email that Dr. Lalani had performed an examination on Roy, indicated that he would perform further traumatic brain injury testing on Roy, and would presumably testify at trial as to his opinions regarding Roy's conditions.

Roy intends to prove causation and damages through expert testimony of Dr. Lalani. The results of Dr. Temple's examination will go to the heart of Transocean's defense strategy. Requiring Dr. Temple to testify at trial without having examined Roy would place him at a distinct disadvantage because it would allow Roy to call into question Dr. Temple's credibility in front of the jury. *See H.E.B.*, 492 S.W.3d at 304. Absent Dr. Temple conducting his own exam, Transocean will "lose the battle of the experts." *Auburn Creek Ltd. P'ship*, 655 S.W.3d at 843. We conclude that an examination of Roy by Dr. Temple "is required to obtain a fair trial and therefore necessitates intrusion upon the privacy of the person [Transocean] seeks to have examined." *See H.E.B.*, 492 S.W.3d at 304 (quoting *Coates*, 758 S.W.2d at 753).

9

Transocean has established all requirements of Rule 204.1 for the examination of Roy. The trial court reasonably could have only reached one decision—granting Transocean's motion to compel the independent examination. *See Walker*, 827 S.W.2d at 840. Therefore, the trial court clearly abused its discretion by denying Transocean's motion to compel the independent examination.

## NO ADEQUATE REMEDY BY APPEAL

Having determined that the trial court abused its discretion, we must now consider whether Transocean has an adequate remedy by appeal. Without an independent examination by Dr. Temple, Transocean would be unable to effectively challenge Roy's experts or develop a complete analysis of the nature of Roy's injuries. *See In re H.E.B.*, 492 S.W.3d at 304-05. Without such evidence, an appellate court would be unable to evaluate the trial court's error. *See Offshore Marine Contractors, Inc.*, 496 S.W.3d at 804. Balancing the benefits and detriments of mandamus, we conclude that, without the requested neuropsychological examination and the opportunity to develop and present its defense, Transocean lacks an adequate remedy by appeal.

## CONCLUSION

Accordingly, we conditionally grant Transocean's petition for writ of mandamus. We direct the trial court to issue a written order vacating its July 18, 2022 order denying relator's motion to compel an independent neuropsychological examination of real party in interest Daman Roy and enter an order compelling Roy to submit to such examination. We are confident the trial court will act in accordance

with this opinion and the writ will issue only if the court fails to do so.  Our August 30, 2022 stay order is lifted.[2]

PER CURIAM

Panel consists of Justices Jewell, Bourliot, and Zimmerer.

---

[2] In his response to the petition for writ of mandamus, Roy applied the factors on limitations on discovery found in Rule 192.4 of the Texas Rules of Civil Procedure.  *See* Tex. R. Civ. P. 192.4. Roy, however, did not raise the Rule 192.4 limitation in its response to Transocean's motion to compel.  Moreover, it does not appear that the Texas Supreme Court has applied those factors in addition to the requirements of Rule 204.1.  Therefore, we do not address the Rule 192.4 factors.