**Opinion issued March 26, 2024**



In The

# Court of Appeals

### For The

# First District of Texas

———————————

### NO. 01-23-00233-CV

———————————

## IN RE KELLOGG BROWN & ROOT, LLC, Relator

———————————

## Original Proceeding on Petition for Writ of Mandamus

———————————

### MEMORANDUM OPINION

In this original mandamus proceeding, relator Kellogg Brown & Root, LLC (KBR) contends that the trial court abused its discretion when it signed an order sanctioning KBR for its attorney's conduct.[1] The order reflects that the trial court found that KBR's then-counsel made intentional misrepresentations to the trial court

---

[1] The underlying case is *Constructora Hostotipaquillo, S.A. de C.V. v. Kellogg Brown & Root, LLC*, cause number 2021-20545, pending in the 295th District Court of Harris County, Texas, the Hon. Donna Roth presiding.

related to a Spanish-to-English translation of a contract involved in a dispute between KBR and real party in interest Constructora Hostotipaquillo, S.A. de C.V. (Hosto). The trial court found that KBR's counsel had instructed the company translating the contract to change its initial certified translation of the Spanish term "Convenio de Asociación" from "Joint Venture Agreement" to "Association Agreement" in order "to better fit the theory of [KBR's] defenses." The trial court also found that the attorney had attached the translator's affidavit—certifying the accuracy of the original translation—to the second translation. The trial court further found that counsel had misrepresented to the court (1) that she had not instructed the translation company to change the translation and (2) that a new affidavit from the translator was attached to the second translation when it was not. The trial court concluded that the conduct of KBR's counsel was "both egregious and intentional in an attempt to strengthen KBR's case and secure a win for what must be an important client."

Based on counsel's conduct, the trial court sanctioned KBR. Among its sanctions, the trial court required that, throughout the remainder of the litigation, including trial, no one could "refer to the Agreement in controversy as anything but 'A Joint Venture Agreement.'"

Because we agree with KBR that the trial court abused its discretion by sanctioning it for its counsel's conduct, and we conclude that KBR does not have an adequate remedy by appeal, we conditionally grant KBR's mandamus petition.

**Background**

In 2019, PTI Infraestructura de Desarrollo, S.A. de C.V. (PTI-ID)—a subsidiary of Pemex, Mexico's national oil company—planned to construct a refinery in Dos Bocas, Tabasco, Mexico. PTI-ID divided the Dos Bocas Project into multiple "packages." The package involved in this case is Package 6, which was divided into two phases, Phase I and Phase II. The work for Phase I consisted of preliminary engineering and procurement services to develop a cost estimate for the engineering, procurement, and construction of a portion of the Dos Bocas Project. During Phase II, the actual engineering, procurement, and construction work would be performed.

KBR and Hosto—which describes itself as a "construction and engineering firm in Mexico"—decided to jointly submit bid proposals to PTI-ID for Package 6. On July 19, 2019, KBR and Hosto entered into two agreements regarding this arrangement—the Teaming Agreement, executed in English, and the Convenio de Asociación,[2] executed in Spanish. The two agreements set out KBR's and Hosto's

---

[2] Because the parties disagree whether the English translation of "Convenio de Asociación" is "Association Agreement" or "Joint Venture Agreement," we refer to the agreement by its Spanish title, "Convenio de Asociación."

respective rights, responsibilities, and roles relating to the bidding process and the services to be provided for Package 6. Under the agreements, KBR would be the project lead for Phase I, and Hosto would be the project lead for Phase II.

PTI-ID awarded KBR and Hosto the work for Phase I. On July 31, 2019, PTI-ID and KBR signed a contract—the Prime Contract—for the Phase I work. KBR signed the contract as the "common representative" of itself and Hosto. On May 8, 2020, KBR and Hosto entered into a contract—the Subcontract—regarding the scope of the Phase I work.

KBR and Hosto were not awarded the Phase II work, and in April 2021, Hosto sued KBR for common-law fraud and fraudulent inducement. Hosto alleged that, before the parties signed the Package 6 contracts, KBR had represented to Hosto that it could and would complete both phases of Package 6. Hosto alleged that KBR knew this was not true because, at the time, KBR was planning to change its business model from construction services to "IT consulting" services. Hosto asserted that, because of this change, KBR knew or should have known that it could not perform the Phase II procurement and construction work. Hosto alleged that KBR's misrepresentations and failure to disclose information about its ability to complete Phase II had fraudulently induced Hosto into entering into the Package 6 contracts and into performing work on Phase I.

4

On July 6, 2021, Hosto amended its petition, adding a cause of action for breach of fiduciary duty. In that pleading and in its later amended petitions, Hosto alleged that it and KBR had formed a joint venture and partnership to pursue and perform the work on Package 6. Hosto asserted that the Convenio de Asociación was a joint venture agreement, referring to it as "the JVA," short for "the Joint Venture Agreement." Hosto alleged that, as joint venturers, KBR owed it a fiduciary duty and that KBR had breached its fiduciary duty in numerous ways. For instance, Hosto claimed that KBR breached its fiduciary duty by "[f]ailing to tell Hosto [that it] never intended to perform its contractual obligations to Hosto" and that it "was transitioning to an IT company." Hosto also claimed that KBR breached its fiduciary duty by "[f]ailing to work in good faith toward winning a contract for Phase II" and by engaging in acts and omissions that caused PTI-ID not to award the Phase II contract to Hosto and KBR. Hosto further alleged that KBR breached its fiduciary duty by failing to pay Hosto for its Phase I work. Hosto claimed that "the breaches caused Hosto to lose millions of dollars of revenue and profits for work it actually performed on Phase I, and [to] lose tens of millions of dollars of revenue and profit for work it would have performed under Phase II if KBR had fulfilled its fiduciary duties." According to Hosto, KBR's breach of fiduciary duty to Hosto also constituted constructive fraud.

5

KBR answered the suit and filed a Rule 91a motion to dismiss Hosto's claims. *See* TEX. R. CIV. P. 91a. On July 9, 2021, KBR filed its second amended answer and its amended Rule 91a motion. Attached to its amended answers and the Rule 91a motions was the Teaming Agreement, originally written in English. Also attached were a certified English translation of (1) the Convenio de Asociación, (2) the Prime Contract, and (3) the Subcontract along with the original Spanish version of each contract. Affixed to each English translation was the translator's affidavit—entitled "certificate of accuracy"—in which the translator certified under oath that the translation was "true, accurate, and complete."

The certified English translation of the Convenio de Asociación interpreted the phrase "Convenio de Asociación"—which was the title of the document—to mean "Association Agreement." In its amended answers and amended Rule 91a motion, KBR referred to the Convenio de Asociación as "the Association Agreement." In contrast, as mentioned, Hosto referred to the Convenio de Asociación as "the Joint Venture Agreement."

In its second amended answer, KBR asserted an affirmative defense that Hosto's claims were barred by the terms of the Teaming Agreement, the Subcontract, and the Association Agreement. In its amended Rule 91a motion, KBR argued, inter alia, that Hosto's claims were barred by limitation-of-liability language in the Teaming Agreement and in the Subcontract. KBR also asserted that "Hosto's

6

breach of fiduciary duty [claim was] barred for the additional reason that the Teaming Agreement expressly disclaimed a joint venture relationship." The disclaimer language referred to by KBR states that the agreement "[did] not create a partnership, joint venture, consortium, legal entity, fiduciary relationship, agency, or other similar relationship between [KBR and Hosto]." KBR asserted that, without a joint venture or partnership relationship, Hosto's breach-of-fiduciary-duty claim failed. KBR claimed that the Teaming Agreement and its disclaimer language was attached to and incorporated into the Convenio de Asociación—a claim that Hosto expressly disputed in its pleadings.

The trial court denied KBR's amended Rule 91a motion. On October 6, 2022, KBR filed a no-evidence and traditional motion for summary judgment. KBR raised many of the same arguments that it had raised in its amended Rule 91a motion, including its argument that Hosto's breach-of-fiduciary-duty claim is barred by the disclaimer language in the Teaming Agreement, which, it argued, was attached to, and incorporated by reference into, the Convenio de Asociación. KBR also argued that the breach-of-fiduciary-duty claim failed because provisions in the Teaming Agreement and in the Subcontract showed that the parties did not agree to share costs—a necessary element to prove a joint venture relationship. KBR further asserted that Hosto's constructive fraud claim was barred because it was merely a "repackaging" of the breach-of-fiduciary-duty claim. KBR's summary-judgment

evidence included the Teaming Agreement and English translations of the Convenio de Asociación, the Prime Contract, and the Subcontract.

Hosto responded, and, on November 2, 2022, the trial court conducted a hearing on KBR's summary-judgment motion. At the hearing, Hosto objected to the English translation of the Prime Contract attached to the summary-judgment motion. Hosto pointed out that the translation differed from the translation that had been attached to KBR's first and second amended answers and to its original and amended Rule 91a motions. Hosto complained that KBR had never disclosed that the translation had been changed. Hosto stated that it had not noticed the change in the translation until after it had responded to the summary-judgment motion. KBR's counsel acknowledged that the English translation of the Prime Contract attached to KBR's summary-judgment motion was a newly-obtained translation (hereafter, the Second Translation) and that it differed from the original translation (hereafter, the First Translation) that KBR had offered in support of its amended answers and Rule 91a motions to dismiss Hosto's claims.

The First and Second Translations differed in how they translated Paragraph 2.4 of the Prime Contract, which in its original Spanish states:

8

> 2.4 Las partes que fungen como **CONTRATISTA** en el presente Contrato celebraron un Convenio de Asociación de fecha 18 de julio de 2019, mismo que forma parte integrante de este Contrato como Anexo "CONVENIO DE PARTICIPACIÓN CONJUNTA", en el que constan las actividades y responsabilidades a que se obligan cada una de las partes respecto del presente Contrato, mismo que incluye el acuerdo de designación de quien actuará como líder en la ejecución del Contrato, los mecanismos que regulen el control de la Asociación y la resolución de controversias entre las partes del **CONTRATISTA**, así como los acuerdos de indemnización entre los mismos, por lo cual son responsables conjuntos en la ejecución del Contrato según el acuerdo previamente indicado, las empresas adjudicatarias del presente instrumento han designado como Compañía Líder a **KELLOGG BROWN & ROOT, LLC.**

The First Translation of the Prime Contract was certified on June 7, 2021. In that translation, Paragraph 2.4 was translated as follows:

> 2.4 The parties acting as the CONTRACTOR under the terms of this Contract entered into an Joint Venture Agreement dated July 18, 2019, which forms an integral part of this Contract and is attached hereto as the Annex entitled "JOINT VENTURE AGREEMENT" which sets forthe the activities and responsibilities each party is obligated to perform with regard to this Contract, and also includes the agreement designating the entity that will act as the leader in the performance of the Contract, mechanisms regulating the control of the Joint Venture and dispute resolution mechanisms to resolve disputes between the CONTRACTOR member companies, as well as indemnification agreements applicable to the members, therefore the parties named above are jointly and severally liable for the performance of the Contract based on the aforementioned agreement. The awardees have named **KELLOGG BROWN & ROOT, LLC** as the Lead Company for the performance of this Contract.

The translator completed the Second Translation of the Prime Contract around September 26, 2022, re-translating Paragraph 2.4 to read:

> 2.4 The parties acting as the **CONTRACTOR** under the terms of this Contract entered into an Association Agreement dated July 18, 2019, which forms an integral part of this Contract and is attached hereto as the Annex entitled "ASSOCIATION AGREEMENT" which sets for the activities and responsibilities each party is obligated to perform with regard to this Contract, and also includes the agreement designating the entity that will act as the leader in the performance of the Contract, mechanisms regulating the control of the Association and dispute resolution mechanisms to resolve disputes between the CONTRACTOR member companies, as well as indemnification agreements applicable to the members, therefore the parties named above are jointly responsible in the execution of the Contract based on the aforementioned agreement. The awardees have named **KELLOGG BROWN & ROOT, LLC** as the Lead Company for the performance of this Contract.

As shown, the translator interpreted the phrase "Convenio de Asociación" in the First Translation to mean "Joint Venture Agreement." In the Second Translation, the translation of that phrase was changed to "Association Agreement."

KBR's counsel pointed out that, when the Convenio de Asociación itself was translated on May 21, 2021—two weeks before the First Translation of the Prime Contract—the translator interpreted the title of the document—"Convenio de Asociación"—to mean "Association Agreement." Counsel noted that the May 21, 2021 translation was the only English translation of the Convenio de Asociación in the record. Counsel pointed out that the Second Translation of the Prime Contract, translating the phrase "Convenio de Asociación" to mean "Association Agreement," was consistent with the May 21, 2021 translation of the Convenio de Asociación itself—the agreement referenced in Paragraph 2.4—while the First Translation, interpreting Convenio de Asociación to mean "Joint Venture Agreement," was not consistent.

KBR's counsel acknowledged that the Spanish word asociación "can mean a lot of things. It can mean association. It can mean partnership in some instances. It can mean joint venture." She asserted that, to determine the correct meaning here, the translator was required to interpret "asociación" in the context of the entire Prime Contract, including its annexes. Counsel stated that Annex 36 to the Prime Contract included the Convenio de Asociación and the Teaming Agreement, which was attached to the Convenio de Asociación. Counsel said that the translator did not have "the benefit of the . . . annexes" when she prepared the First Translation of the Prime Contract and interpreted "Convenio de Asociación" to mean "Joint Venture

Agreement," but the translator did have the annexes, including Annex 36, when she prepared the Second Translation. Counsel stated that, in the Second Translation, the translator "corrected" her translation "after reviewing the entirety of the annexes" to change the interpretation of "Convenio de Asociación" from "Joint Venture Agreement" to "Association Agreement."

After hearing the parties' arguments, the trial court sustained Hosto's objection, ruling that KBR could not rely on the Second Translation and must use the First Translation. Hosto then objected that KBR had filed "a fraudulent affidavit" along with the Second Translation. Hosto pointed out that a new certificate of accuracy was not attached to the Second Translation. Instead, the translator's certificate of accuracy attached to the Second Translation was the same certificate of accuracy, dated June 21, 2021, that had been attached to and certified the First Translation. After acknowledging that the certificate of accuracy from the First Translation was attached to the Second Translation, KBR's counsel told the trial court, "[W]e have a new certification from the translator that certifies their amended translation." The trial court asked if the new certification had been sent to Hosto. KBR's counsel stated, "I believe we have [sent it]," but she "would need to double check" because she could not "confirm or deny" whether it had been sent. The trial court did not rule on Hosto's objection to the certificate of accuracy, remarking that

the issue "was not before" the court at that time. The trial court did not rule on KBR's motion for summary judgment but instead took "under advisement."

Contrary to counsel's statement to the trial court, an updated certificate of accuracy for the Second Translation had not been sent by the translator for the Second Translation. After the summary-judgment hearing, a paralegal who worked for the law firm representing KBR, contacted the translator to obtain a certificate of accuracy for the Second Translation, which the translator provided. KBR's counsel also withdrew the Second Translation from KBR's trial exhibit list.

Two days after the summary-judgment hearing, Hosto filed a "Motion for Death Penalty Sanctions for Fraud on the Court." Hosto asked the trial court to sanction KBR by striking KBR's pleadings. It claimed that the sanctions were warranted because "KBR ha[d] manufactured evidence" in the case and "KBR's counsel ha[d] lied to [the trial court] to cover up its fraudulent and unethical conduct." As it had at the summary-judgment hearing, Hosto told the trial court that KBR never informed Hosto that the translation of the Prime Contract attached to KBR's motion for summary judgment—that is, the Second Translation—was a new translation of the Prime Contract, which differed from the First Translation. Hosto only discovered the changes by comparing the First and Second Translations. Hosto intimated that KBR had attached the First Translation's certificate of accuracy to the Second Translation to conceal that the translation was changed.

Hosto also claimed that the First Translation of the Prime Contract was "altered fraudulently" because KBR's counsel had specifically instructed the translation company what changes to make and what words to use in the Second Translation. Hosto offered the declaration of its counsel, who testified that he had spoken with a representative of the translation company about the Second Translation. The representative told him that "[s]omeone with [the law firm representing KBR] had emailed [the translation company] a detailed list of words and phrases to change, along with the page numbers where those words and phrases appeared." Hosto's counsel also testified that the representative said that KBR's counsel had "directed" the translation company to change the translation of asociación from "joint venture" to "association." The representative said that the translation company "never provided" a new certificate of accuracy for the Second Translation "or otherwise certified it in any way." Hosto asserted that KBR's counsel "lied" to the trial court at the summary-judgment hearing when she "represented to the Court that a new [certificate of accuracy] existed [for the Second Translation] and that she thought it had been produced." Hosto intimated that counsel had lied to the trial court to cover up KBR's fraudulent conduct relating to the new translation.

In its response, KBR asserted that Hosto had "not pointed to any evidence that would suggest that the [Second Translation] was fraudulent." Although the First Translation was certified on June 7, 2021, KBR claimed that the Second Translation

had not been requested until the end of September 2022 because it was only shortly before then that new information had been learned relevant to translating the Prime Contract. KBR acknowledged that on July 8, 2021—one month after the First Translation was prepared—the paralegal for KBR's counsel (the paralegal) had emailed a representative of the translation company, requesting the representative to ask the translator who prepared the First Translation why she had used the phrase "Joint Venture Agreement" rather than "Association Agreement" when translating Paragraph 2.4. The representative responded, forwarding the translator's response. In her response, the translator explained why she thought the translation was correct. She concluded her message by stating: "If the client prefers not to use [the term 'Joint Venture Agreement'], 'Association Agreement' would be fine for 'Convenio de Asociacion.'" KBR asserted that it did not seek the Second Translation at that point because "KBR's counsel did not have the annexes to the Prime Contract and did not know that the Association Agreement and Teaming Agreement (which disclaimed the formation of a joint venture) were attached to the Prime Contract as Annex 36."

KBR also asserted that new information was learned in mid-September 2022 during the deposition of Ignacio Claudio Bincaz, a former KBR employee who helped negotiate the Prime Contract. KBR asserted that Bincaz, who is fluent in

14

Spanish and English, "explained at length that the Prime Contract KBR executed in Spanish did not include the term 'joint venture agreement' as it is used in English."

To support its sanctions response, KBR offered the declaration of its counsel. She testified that her law firm had "sought the translation of the Prime Contract before [she] received the annexes [to the contract], and [they], therefore, did not provide the translator the annexes with the Prime Contract when the [First Translation] was prepared" on June 7, 2021. Counsel testified that, about one month after the First Translation was prepared, she directed the paralegal "to ask the translator why [she] chose to translate 'Convenio de Asociación' to 'Joint Venture Agreement.'" In an apparent reference to the July 8, 2021 email response from the translation company, counsel testified that the paralegal "inquired and informed [counsel] that the translator said 'Association Agreement' would be fine for 'Convenio de Asociación.'"

Counsel also stated that, when she "presented Ignacio Bincaz for his deposition on September 14, 2022, . . . he adamantly denied that the [original] Spanish [version of the Prime Contract] would have included the phrase 'Joint Venture Agreement.'" Counsel testified that the translation company was asked to revise the First Translation of the Prime Contract based on Bincaz's testimony and "the translator's previous statement that 'Association Agreement' was an acceptable translation."

KBR offered the September 26, 2022 email from the paralegal, who had instructed the translation company to change its original translation of the Prime Contract. In the email, the paralegal asked the translator to "fix [the] issues" listed in the email. Regarding Paragraph 2.4, the paralegal instructed the translator to change the term "Joint Venture" to "Association Agreement" and instructed "[a]nywhere that says 'Joint Venture' should be 'Association.'" Based on the instructions in the email, the translator prepared the Second Translation.

KBR also asserted that Hosto had not shown that "the wrong [certificate of accuracy] was purposefully included" with the Second Translation. KBR offered the declaration of the paralegal. She had also been involved in preparing the exhibits for KBR's summary-judgment motion. The paralegal testified that, when she discovered the certificate of accuracy was missing from the Second Translation, she contacted the translation company and asked that the certificate be sent. She stated that the translation company sent her a certificate, which she attached to the Second Translation. The paralegal testified that she had not noticed that the translation company had resent the June 7, 2021 certificate for the original translation of the Prime Contract instead of providing an updated certificate for the new translation. The paralegal said that she had "presumed that [the translation company] had provided an updated certification given that [she] was asking for one."

In her declaration, KBR's counsel addressed the allegation that she had lied to the trial court at the summary-judgment hearing when she had indicated that a new certificate had been obtained for the Second Translation. Counsel testified that she "did not know that the [Second Translation] of the Prime Contract was submitted as an exhibit with the original June 7, 2021 certification of accuracy until after [she] discovered it at the November 2, 2022 hearing" for KBR's summary-judgment motion. She stated that she "believed that [they] had obtained an updated certification for the corrected translation." She said that it was "not until [she] returned to [her] office after the summary judgment hearing that [she] learned that [they] had not received an updated certification for the [Second Translation]." After learning this, she "immediately withdrew the [Second Translation] from KBR's trial exhibit list" and "requested that [the paralegal] obtain the certification of accuracy from the translator."

On December 12, 2022, the trial court conducted a hearing on Hosto's sanctions motion. The parties asserted arguments similar to those raised in their respective written filings. Hosto's counsel acknowledged that the Spanish term "Convenio de Asociación" can "mean a lot of different things. It can mean association, it can mean partnership, it can mean joint venture." KBR maintained that, in this case, the term meant "Association Agreement," while Hosto maintained

that it meant "Joint Venture Agreement." The trial court noted, "This whole case rests on whether it's a joint venture agreement or not."

Before the sanctions hearing, KBR had filed a motion to strike Hosto's Fourth Amended Petition and a motion to exclude Hosto's non-retained damages experts. These two motions were also discussed at the sanctions hearing.

On December 30, 2022, the trial court signed an order sanctioning KBR, ruling that Hosto's "Motion for Sanctions should be GRANTED." The trial court found that "the conduct of [KBR's] counsel was both egregious and intentional in an attempt to strengthen KBR's case and secure a win for what must be an important client." The trial court made specific factual findings detailing counsel's "egregious and intentional" conduct. Among its findings, the trial court determined that:

> 3. KBR's counsel, specifically and intentionally, instructed the company responsible for the translation . . . to change the term "joint venture agreement" to "Association Agreement."
>
> 4. KBR's counsel provided these instructions to the translation company to better fit the theory of their defenses.
>
> 5. [I]t was not the translation company that suggested the change but . . . KBR's counsel[] that requested the change.
>
> 6. [T]his conduct [was] particularly egregious in that KBR's counsel's . . . briefing specifically states that "counsel for KBR is not fluent in Spanish."
>
> 7. [KBR's counsel] knew or should have known, that the translation was changed, as she had instructed it to be changed, and that a new Certificate of Accuracy would be required.

18

8. [KBR's counsel] knew or should have known, that no such certificate existed. Nonetheless, [KBR's counsel] represented to the Court that an updated Certificate of Accuracy was in fact attached to the subsequent translation.

9. [T]he second translation was attached to [KBR's] Motion for Summary Judgment with the Certificate of Accuracy from the first translation.

10. [A] proper and accurate translation should not be based upon the documents presented with it for the translator to determine the proper meaning of the document. Translators translate, they do not interpret the meaning of the document.

11. [The] paralegal [for KBR's counsel] was working at the direction and instructions of counsel . . . when on September 26, 2022 [the paralegal] instructed [the translation company] to correct the translation of the Prime Contract on behalf of [KBR's counsel].

12. [KBR's counsel's] declaration does not include any indication that she simply made a mistake or that she was sorry for her misrepresentation to the Court. . . .

13. [I]n [counsel's] declaration . . . she quotes from an email from [the translation company that] "Association Agreement" would be fine for "Convenio de Asociacion." However, that is only one-half of the sentence from the email. The email indicates "**If the client prefers not to use the same term**, "Association Agreement" would be fine for "Convenio de Asociacion." . . . The Court finds this a material omission by a lawyer under a declaration filed with the Court and entered for the truth of the matter for which it was intended.

. . . .

16. [P]ursuant to Texas Rule of Civil Evidence 1009[,] the work product of a translator shall be certified as fair and accurate. Pursuant to Rule 1009(c) if no objection is timely filed (45 days) it precludes a party from attacking or offering evidence contradicting the accuracy of such translation. [KBR] filed the first translation on June 11, 2021. They [sic] filed no objection within 45 days.

17. [T]he translator's Certificate of Accuracy of June 7, 2021 to the truthfulness and accuracy of the first translation [was] proper and the failure of the second translation to have a similar Certificate [is] informative.

. . . .

20. The Court finds that KBR's counsel's subsequent withdrawal of the second translation is nothing more than damage control once their hands were caught in the cookie jar.

The trial court determined that it "[would] not strike [KBR's] pleadings as the current case law will not allow it to be upheld despite being warranted by the facts and findings found above by this Court." Instead, the trial court ordered:

The Court does GRANT the following sanctions—

1. At no time during the remaining litigation and through the trial will anyone refer to the Agreement [i.e., the Convenio de Asociación] in controversy as anything but "A Joint Venture Agreement."

2. [KBR's] Motion for Summary Judgment is DENIED.

3. [KBR's] Motion to Strike Plaintiff's Fourth Amended Petition is DENIED.

4. [KBR's] Motion to Exclude [Hosto's] Purported "Non-Retained" Damages Experts . . . is DENIED.

5. Discovery in this case is now closed. There will be no further motions filed by [KBR] in this case.

KBR retained new counsel, who requested a status conference. At the status conference, new counsel pointed out that, due to the breadth of last sanction— ordering that KBR could file "no further motions"—neither a motion to substitute

20

counsel nor a motion to reconsider the sanctions ruling could be filed. At the end of the hearing, the trial court stated:

> I will clarify my order to modify it just slightly to indicate that there will be no further substantive motions. Any procedural type of motions that need to be filed like a motion for substitution or a motion for a different trial date or procedural type things, I am happy to entertain.
>
> But, my order stands. And there was nothing, or is nothing, in my order that says you can't file a writ of mandamus.

On February 21, 2023, the trial court modified the final provision in the sanction's order to read: "Discovery in this case is now closed. There will be no further Motions for Summary Judgment, Motions to Strike Experts or motions that rehash the matters ruled upon by this Court in this Order, filed by [KBR] in this case."

KBR filed a petition for writ of mandamus in this Court. KBR asks us to conditionally grant its petition and direct the trial court to vacate its sanctions order.[3]

## Mandamus Relief

In its sole issue, KBR contends that it is entitled to mandamus relief—specifically, vacatur of the sanctions order—because (1) the trial court abused its discretion by sanctioning KBR and (2) it has no adequate remedy by appeal.

---

[3] When we refer to the trial court's sanctions order, we are referring to the trial court's December 30, 2022 order, as modified by its February 21, 2023 order.

## A. Hosto's Waiver Argument

Before addressing the merits of KBR's mandamus petition, we address Hosto's assertion that KBR waived its challenge to the first sanction listed in the order by not challenging two of the trial court's findings. *See In re Comerford*, No. 2-09-161-CV, 2009 WL 5183798, at *2 (Tex. App.—Fort Worth Dec. 31, 2009, orig. proceeding) (mem. op.) (denying mandamus petition because, inter alia, relator had failed to challenge all grounds on which challenged ordered was based). The first sanction, which Hosto refers to as the "Translation Sanction," requires that, throughout the remainder of the litigation, including trial, no one could refer to the Convenio de Asociación as anything but a "Joint Venture Agreement." Hosto argues that KBR waived review of the Translation Sanction because it did not challenge the following two findings:

> 10. [A] proper and accurate translation should not be based upon the documents presented with it for the translator to determine the proper meaning of the document. Translators translate, they do not interpret the meaning of the document.

. . . .

> 16. Pursuant to Texas Rule of Civil Evidence 1009[,] the work product of a translator shall be certified as fair and accurate. Pursuant to Rule 1009(c) if no objection is timely filed (45 days) it precludes a party from attacking or offering evidence contradicting the accuracy of such translation. [KBR] filed the first translation on June 11, 2021. They [sic] filed no objection within 45 days.

22

Hosto contends that these findings show that the trial court rejected KBR's assertion that the Second Translation was the most accurate translation and that the trial court found the First Translation "to be proper." Hosto claims that the two findings comprise a Rule of Evidence 1009 "evidentiary ruling" prohibiting KBR from relying on the Second Translation. *See* TEX. R. EVID. 1009 (governing admission of translations of foreign documents). Hosto suggests that the "evidentiary ruling" provides an alternative basis to support the Translation Sanction apart from the trial court's findings that KBR's counsel engaged in misconduct. Hosto claims that, by failing to assign error to the "evidentiary ruling," KBR waived its challenge to the First Sanction. We disagree.

The findings do not comprise an evidentiary ruling and do not provide a separate basis to uphold the Translation Sanction apart from the trial court's findings of counsel's misconduct. The two findings, in conjunction with other findings, support the trial court's determination that KBR's counsel engaged in misconduct related to obtaining the Second Translation. Specifically, the findings support the trial court's disbelief of counsel's explanation (1) for why the Second Translation was needed, (2) for why counsel instructed the translator to use certain language in the Second Translation, and (3) for why counsel waited more than a year to obtain the Second Translation. As discussed below, KBR challenges the sanctions by

23

asserting that it was error for the trial court to sanction it based on its counsel's misconduct. Thus, KBR has not waived its challenge to the Translation Sanction.

Even if we were to assume that the two findings constituted an evidentiary ruling, the Translation Sanction—prohibiting "anyone [from] refer[ing] to the Agreement in controversy as anything but 'A Joint Venture Agreement'"—prohibits more than KBR's reliance on the Second Translation of the Prime Contract.[4] For instance, the sanction will also effectively prohibit KBR from discussing or using at trial its certified May 21, 2021 English translation of the Convenio de Asociación— "the Agreement in controversy" referenced in the Translation Sanction. In the May 21, 2021 translation, the term "Convenio de Asociación"—which appears as the heading on the first page of the agreement and in the body of the agreement—was translated to mean "Association Agreement." The translation of the Convenio de Asociación preceded the Second Translation of the Prime Contract by more than one year. During the litigation, KBR relied on the translation of the Convenio de Asociación itself to support its amended answer, its amended Rule 91a motion, and its motion for summary judgment. Consistent with the certified translation, KBR referred to the Convenio de Asociación in its dispositive motions—both before and

---

[4]     We note that, when it signed the sanctions order, the trial court had already ruled at the summary-judgment hearing that KBR could not rely on the Second Translation and could rely only on the First Translation. That ruling occurred two days before Hosto filed its sanctions motion and nearly two months before the trial court signed the sanctions order.

24

after the Second Translation—as the "Association Agreement." But, under the Translation Sanction, KBR would be precluded from referring to the Convenio de Asociación as the "Association Agreement." Because the scope of the Translation Sanction goes beyond prohibiting KBR's reliance on the Second Translation, we conclude that KBR did not waive its right to seek mandamus relief for that sanction even if the findings constitute an evidentiary ruling.[5]

## B.    Standard of Review

Mandamus relief is an extraordinary remedy. *In re Acad., Ltd.*, 625 S.W.3d 19, 25 (Tex. 2021) (orig. proceeding). The party seeking mandamus relief must show that the trial court clearly abused its discretion. *In re Allstate Indem. Co.*, 622 S.W.3d 870, 875 (Tex. 2021) (orig. proceeding). A trial court abuses its discretion when it

---

[5]    Hosto also asserts that the "unchallenged . . . findings are supported by evidence in the record and, thus, are binding on [this] Court." To support its assertion, Hosto cites authority discussing the consequence of failing to challenge findings of fact that have evidentiary support made pursuant to Rule of Civil Procedure 296 following a bench trial. *See Nguyen v. Terra Nostra Realty, Inc.*, No. 01-20-00668-CV, 2022 WL 4240909, at *5 (Tex. App.—Houston [1st Dist.] Sept. 15, 2022, no pet.) (mem. op.) ("Because these findings have evidentiary support and are unchallenged by Nguyen, we are bound by them."). However, "findings of fact" made in support of a sanctions order are not treated as findings under Rule of Civil Procedure 296. *Phillips v. Am. Bankers Ins. Co. of Fla.*, No. 01-18-00375-CV, 2019 WL 3121856, at *6 (Tex. App.—Houston [1st Dist.] July 16, 2019, pet. denied) (mem. op.) (citing *Clark v. Bres*, 217 S.W.3d 501, 513 (Tex. App.—Houston [14th Dist.] 2006, pet. denied)). Rather, "[t]he purpose of findings made following the imposition of sanctions is to assist the appellate court in its analysis, assure judicial deliberation, and enhance the deterrent effect of the sanctions order itself." *Id.* (citing *Liles v. Contreras*, 547 S.W.3d 280, 287 (Tex. App.—San Antonio 2018, pet. denied)).

acts with disregard of guiding rules or principles or in an arbitrary or unreasonable manner. *In re Garza*, 544 S.W.3d 836, 840 (Tex. 2018). A trial court's "failure to analyze or apply the law correctly is an abuse of discretion." *In re Kappmeyer*, 668 S.W.3d 651, 655 (Tex. 2023) (internal quotation marks omitted).

A party seeking mandamus relief must also show that it has no adequate remedy by appeal. *In re Allstate Indem.*, 622 S.W.3d at 875. "Whether a clear abuse of discretion can be adequately remedied by appeal depends on a careful analysis of costs and benefits of interlocutory review." *In re McAllen Med. Ctr., Inc.*, 275 S.W.3d 458, 464 (Tex. 2008) (orig. proceeding).

## C. Propriety of the Sanctions

### 1. Applicable Legal Principles

"A trial court may be authorized to impose sanctions against a party or the party's attorney by rule, statute, or inherent authority." *Anderson v. Hernandez*, No. 01-21-00490-CV, 2023 WL 8630980, at *7 (Tex. App.—Houston [1st Dist.] Dec. 14, 2023, no pet.) (mem. op.). Here, the trial court did not identify the legal authority under which it imposed the sanctions, but the parties agree that the only possible legal basis for the sanctions was the trial court's inherent authority.

"A trial court possesses the inherent authority to impose sanctions for a bad faith abuse of the judicial process even when the specific conduct is not covered by a rule or statute." *Phillips v. Am. Bankers Ins. Co. of Fla.*, No. 01-18-00375-CV,

2019 WL 3121856, at *7 (Tex. App.—Houston [1st Dist.] July 16, 2019, pet. denied) (mem. op.); *see In re Bennett*, 960 S.W.2d 35, 40 (Tex. 1997) (stating that courts possess inherent power to discipline attorney's behavior). "A trial court may exercise this inherent authority as necessary to deter, alleviate, or counteract a bad faith abuse of the judicial process." *Phillips*, 2019 WL 3121856, at *7; *see Eichelberger v. Eichelberger*, 582 S.W.2d 395, 398–99 (Tex. 1979) (recognizing that court has inherent power to aid in exercise of its jurisdiction, in administration of justice, and in preservation of its independence and integrity).

Even under a court's inherent authority, the imposition of sanctions must be in accordance with the principles of due process. *See Brewer v. Lennox Hearth Prods., LLC*, 601 S.W.3d 704, 718 (Tex. 2020) (recognizing that "inherent authority to sanction is limited by due process"). Due process requires that a sanction be "just." *See Nath v. Tex. Children's Hosp.*, 446 S.W.3d 355, 363 (Tex. 2014).

In *TransAmerican Natural Gas Corp. v. Powell*, the Supreme Court of Texas established a two-prong test to determine whether a sanction is just. *See* 811 S.W.2d 913, 917 (Tex. 1991); *see Nath*, 446 S.W.3d at 363 (explaining *TransAmerican* two-prong test). "The first prong of the *TransAmerican* test concerns the relationship between the conduct evinced and the sanction imposed and requires a direct nexus between the offensive conduct, the offender, and the sanction award." *Nath*, 446 S.W.3d at 363. To meet this requirement, the sanctions "must be directed against the

27

abuse and toward remedying the prejudice caused the innocent party." *TransAmerican*, 811 S.W.2d at 917. It also means that the sanction must also "be visited upon the true offender." *Nath*, 446 S.W.3d at 363 (citing *TransAmerican Nat. Gas*, 811 S.W.2d at 917). "The trial court must at least attempt to determine whether the offensive conduct is attributable to counsel only, or to the party only, or to both." *TransAmerican*, 811 S.W.2d at 917.[6] "Sanctions may be visited exclusively on the attorney if the evidence demonstrates that the offensive conduct is attributable to

---

[6] Asserting that the sanctions imposed here are not death penalty sanctions, Hosto claims that KBR cannot rely on cases involving death penalty sanctions, such as *TransAmerican Natural Gas Corp. v. Powell*, to support KBR's argument (discussed below) that the sanctions here are unjust because they were based on counsel's conduct, not its own conduct. 811 S.W.2d 913 (Tex. 1991). Contrary to Hosto's position, the Supreme Court of Texas and this Court have reviewed a sanction's justness by considering whether the sanction was visited on the true offender, irrespective of whether the sanction was a death penalty sanction. *See In re Garza*, 544 S.W.3d 836, 842–43 (Tex. 2018) (orig. proceeding) (granting relator mandamus relief because trial court abused its discretion in sanctioning relator "in the absence of evidence that she was an offender" and relator did not have adequate remedy by appeal, even though sanctions were "less than" death penalty sanctions); *see also Am. Flood Research, Inc. v. Jones*, 192 S.W.3d 581, 584–85 (Tex. 2006) (holding that trial court was within its discretion to impose $15,000 sanction on attorney where "the evidence demonstrate[d] that the offensive conduct [was] attributable to counsel alone"); *Phillips*, 2019 WL 3121856, at *9 (concluding that $3,954.12 sanction against appellant was unjust because record showed that he was not "the true offender"). Hosto further claims that the cases cited by KBR involving death penalty sanctions are inapposite to this case because (1) the sanctions here, unlike in those cases, are "remedial" and (2) the sanctions satisfy the justness requirement of being "directed against the abuse and toward remedying the prejudice caused the innocent party." *See TransAmerican*, 811 S.W.2d at 917. But, even if that is true, more is required for a sanction to be just: the sanction must also be imposed against the true offender. *See id.*; *see also Spohn Hosp. v. Mayer*, 104 S.W.3d 878, 882–83 (Tex. 2003) (reversing sanctions because, "[a]lthough the sanctions were generally 'directed against' the alleged abuse, the record contain[ed] no evidence that the sanctions were 'visited on the offender'").

28

counsel alone." *Am. Flood Research, Inc. v. Jones*, 192 S.W.3d 581, 584 (Tex. 2006). Second, sanctions must not be excessive; in other words, "[t]he punishment should fit the crime." *TransAmerican*, 811 S.W.2d at 917. To avoid being excessive, the sanction should be no more severe than necessary to satisfy its legitimate purposes, such as securing compliance with rules of procedure, punishing rule violators, and deterring future misconduct. *Nath*, 446 S.W.3d at 363.

### 2. *Unjust Sanctions*

KBR argues that the trial court abused its discretion because the sanctions were not just. KBR points to a lack of evidence supporting the first *TransAmerican* prong requiring that there be a direct relationship between the offensive conduct, the offender, and the sanction imposed. KBR argues that the sanctions were not visited on the true offender because the offensive conduct for which KBR was sanctioned was attributable only to its counsel. As support for its argument, KBR points to the trial court's findings in the sanctions order.

The trial court found that "the conduct of [KBR's] counsel was both egregious and intentional in an attempt to strengthen KBR's case and secure a win for what must be an important client." Detailing the offensive conduct, the trial found that counsel had "specifically and intentionally" instructed the translation company to change the term "joint venture agreement" found in First Translation of the Prime Contract to "association agreement." Counsel, not the translation company, had

29

suggested the change "to better fit the theory of [KBR's] defense." Counsel acknowledged that she was not fluent in Spanish, conduct the trial court found "particularly egregious."

Although counsel "knew or should have known" that the second translation required a new certificate of accuracy, "the second translation was attached to [KBR's] Motion for Summary Judgment with the certificate of accuracy from the first translation." Despite not being attached, KBR's counsel "represented to the [trial court] that an updated Certificate of Accuracy was in fact attached to the [second] translation." The trial court noted that counsel's "declaration [did] not include any indication that [counsel] simply made a mistake or that she was sorry for her misrepresentation to the [trial court]."

The trial court further found that, in her declaration, KBR's counsel misquoted and misrepresented a statement made by the representative of the translation company by omitting a portion of the representative's statement. The trial court found counsel's omission to be "a material omission by a lawyer under a declaration filed with the [trial court] and entered for the truth of the matter for which it was intended."

Although it sanctioned only KBR, the trial court's findings described misconduct committed only by counsel. The trial court made no findings implicating KBR in its counsel's misconduct or attributing any misconduct to KBR.

30

We are mindful that, when reviewing a sanctions award, appellate courts are "not bound by a trial court's findings of fact and conclusions of law." *Am. Flood Research*, 192 S.W.3d at 583. Instead, we "must independently review the entire record to determine whether the trial court abused its discretion" in rendering sanctions. *Id.* In its mandamus response, Hosto claims that, apart from the trial court's findings, the mandamus record supports the sanctions. Hosto contends that the record demonstrates that counsel's offending conduct is attributable to KBR.

Hosto asserts that "KBR's in-house counsel attend[ed] hearings and depositions, which place[d] KBR, as client, in no different position than [its attorney], as outside counsel." But other than a similar statement made by Hosto's counsel at the sanctions hearing, Hosto cites no additional support in the mandamus record for this assertion. Nor does Hosto explain, or the mandamus record reflect, how in-house counsel's general attendance at hearings and depositions implicated KBR in its outside counsel's conduct of directing the translator to change the initial translation or in counsel's conduct of misrepresenting information to the trial court.

Hosto also points to the deposition testimony of Nelson Tomas, KBR's corporate representative. In his deposition, Tomas was asked whether—"to the best if [his] recollection"—the English translation of the Prime Contract, which he reviewed to prepare for his deposition, "contain[ed] the words 'jointly and severally liable.'" Tomas responded, "Not to the best of my recollection." Although the record

31

shows that the Second Translation of the Prime Contract was not prepared until after Tomas's deposition, Hosto asserts that Tomas's answer shows that KBR was aware of the "forthcoming existence" of the Second Translation. As support for this assertion, Hosto points out that Tomas's deposition testimony reflected that he was familiar with other terms in the Prime Contract. Hosto also points out that KBR's counsel asked the translator to change the translation six days after Tomas's deposition.

We disagree that Tomas's testimony implicated KBR in counsel's conduct of instructing the translator to change the translation. Tomas's testimony showed that, at most, he did not believe that the Prime Contract included the phrase "jointly and severally liable." Even when considering Tomas's other testimony about the Prime Contract and the timing of counsel's request to change the translation, beyond speculation and suspicion, Tomas's testimony provided no support for an inference implicating KBR in its counsel's conduct. *See Suarez v. City of Tex. City*, 465 S.W.3d 623, 634 (Tex. 2015) ("An inference is not reasonable . . . if it is premised on mere suspicion"); *Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 728 (Tex. 2003) (observing that "some suspicion linked to other suspicion produces only more suspicion, which is not the same as some evidence" (internal quotation marks omitted)).

Finally, Hosto asserts that emails between the translation company's representative and counsel's paralegal sent on July 8, 2021 implicate KBR in its counsel's conduct of directing the translator to change the translation. In the emails, the paralegal requested the representative to ask the translator why she had used the phrase "Joint Venture Agreement" rather than "Association Agreement" in the First Translation when translating Paragraph 2.4. The paralegal told the representative that they "need[ed] to know [the answer] ASAP" because "the attorneys need[ed] to have that feedback [to] make some decisions first thing tomorrow." The representative answered the paralegal, quoting the translator's response. In her response, the translator explained why she had translated the phrase "Convenio de Asociación" to mean "Joint Venture Agreement" rather than "Association Agreement." She also stated, "If the client prefers not to use [the term 'Joint Venture Agreement'], 'Association Agreement' would be fine for 'Convenio de Asociacion.'"

Hosto asserts that the translator's reference to "the client" in her response referred to KBR, thereby providing evidence that KBR was involved in requesting the Second Translation. However, the context of the translator's reference to "the client" does not support Hosto's reading. Neither the paralegal nor the representative mentioned KBR in the email exchange, nor was KBR a party to the emails. And, regardless of what the translator may have meant by the term in her response, the

33

paralegal's email stated that the attorneys needed the translator's answer "ASAP" so that they could "make decisions." This indicated that counsel sought the information as part of her provision of legal services to KBR.

In addition, counsel testified in her declaration that she had requested a revised translation after receiving, through discovery, the annexes to the Prime Contract and after hearing the testimony of KBR representative Bincaz, who denied that the Prime Contract included the phrase "Joint Venture Agreement." Counsel explained that she requested the First Translation to be revised based on both Bincaz's deposition testimony and the portion of the translator's email response stating that the phrase "Convenio de Asociación" could be translated to mean "Association Agreement." Even though the trial court rejected counsel's explanation in the sanctions order, counsel's declaration, along with later emails from counsel's paralegal instructing the translator to revise the First Translation, showed that counsel, not KBR, decided to seek the Second Translation and then took action to obtain it.

We conclude that the circumstances and events reflected in the mandamus record are not sufficient to justify attributing counsel's complained-of conduct to KBR. While an attorney-client relationship alone will not shield a client from being implicated in its attorney's misdeeds, "[a] party should not be punished for counsel's conduct in which it is not implicated apart from having entrusted to counsel its legal representation." *See TransAmerican*, 811 S.W.2d at 917; *see also Sosa v. Union Pac.*

34

*R.R. Co.*, No. 13-13-00257-CV, 2015 WL 2353024, at *8 (Tex. App.—Corpus Christi May 14, 2015, pet. dism'd) (mem. op.) (explaining, in case where attorneys represented clients in litigation for six years, that "the length of representation alone is not enough to create an inference that [the clients] were involved in [the attorneys'] discovery abuses"). Here, apart from entrusting its legal representation to counsel, neither the trial court's findings nor an independent review of the mandamus record implicate KBR in any sanctionable conduct by its counsel. *See Hernandez v. Moya*, No. 03-18-00362-CV, 2019 WL 4068568, at *4 (Tex. App.—Austin Aug. 29, 2019, no pet.) (mem. op.) (concluding "it was improper for the trial court to impute the discovery non-responsiveness to [appellant]" where "the record implies that it was [appellant's attorney] who did not properly and timely respond to discovery requests," and there was no evidence of non-responsiveness inferable to appellant individually); *White v. Zhou Pei*, 452 S.W.3d 527, 549 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (reversing monetary sanctions imposed against clients, but not their attorneys, where record showed that attorneys, not clients, made misrepresentations to trial court).

Because the mandamus record contains no evidence that KBR was an offender—that is, no offensive conduct is attributable to KBR—we conclude that the first prong of the *TransAmerican* test requiring a direct nexus between the offensive conduct, the offender, and the sanction imposed was not satisfied. *See*

*TransAmerican*, 811 S.W.2d at 917; *Hernandez*, 2019 WL 4068568, at *4; *White*, 452 S.W.3d at 549. Therefore, we hold that the trial court abused its discretion in sanctioning KBR.[7] *See In re Garza*, 544 S.W.3d at 842 (holding that trial court abused its discretion by imposing sanctions on relator "in the absence of evidence that she was an offender").

## D.    Adequate Remedy by Appeal

Because we have held that KBR met the first requirement for mandamus relief—that the trial court abused its discretion—we turn to the second requirement: whether KBR has an adequate remedy by appeal to challenge the sanctions order. "No specific definition captures the essence of or circumscribes what comprises an 'adequate' remedy; the term is 'a proxy for the careful balance of jurisprudential considerations,' and its meaning 'depends heavily on the circumstances presented.'" *In re Garza*, 544 S.W.3d at 840 (quoting *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 136–37 (Tex. 2004)). "As this balance depends heavily on circumstances, it must be guided by analysis of principles rather than simple rules that treat cases as categories." *In re McAllen Med. Ctr., Inc.*, 275 S.W.3d at 464.

---

[7]    In its mandamus petition, KBR also asserts arguments addressed to other aspects of the first *TransAmerican* prong and to the second prong. We need not address those arguments because they are unnecessary to the disposition of this original proceeding. *See* TEX. R. APP. P. 47.1, 52.8(d). Thus, we express no opinion about the merits of those arguments.

## 1. *The Translation Sanction*

Integral to at least two of Hosto's causes of action is its allegation that it had a joint venture relationship with KBR. The parties dispute whether the Convenio de Asociación constitutes a joint venture agreement between the parties. At the sanctions hearing, the trial court recognized the significance of the dispute, noting: "This whole case rests on whether [the Convenio de Asociación is] a joint venture agreement or not."

"An appeal is not an adequate remedy when 'the party's ability to present a viable claim or defense at trial is vitiated or severely compromised' by the trial court's error." *See In re Allstate Indem. Co.*, 622 S.W.3d at 883 (quoting *Walker v. Packer*, 827 S.W.2d 833, 843 (Tex. 1992)). KBR asserts that the Translation Sanction vitiates and severely compromises its ability to defend against Hosto's assertion that the parties entered into a joint venture relationship. KBR contends that the Translation Sanction places KBR in the untenable position of defending against Hosto's claim that the Convenio de Asociación is a joint venture agreement while simultaneously being required to refer to it as just that.

Hosto responds that we should deny mandamus relief because the Translation Sanction "merely restor[ed]" the status quo that existed before KBR obtained the Second Translation of the Prime Contract, that is, it restores KBR to the position of relying on the First Translation to support its affirmative defenses. Hosto contends

that the sanction does not prohibit KBR from asserting its defensive argument—raised in KBR's amended Rule 91a motion—that because the Teaming Agreement was incorporated by reference into the Convenio de Asociación, the disclaimer language in the Teaming Agreement expressly refutes a joint venture relationship.

Hosto correctly points out that KBR attached the First Translation to its amended Rule 91a motion. It posits that KBR's use of the First Translation "as a basis for seeking dispositive relief [in its amended Rule 91a motion] shows beyond doubt that having to return to the [First] Translation does not impact KBR's ability to present its [disclaimer] defense." However, in making its argument, Hosto understates the effect of the Translation Sanction.

The Translation Sanction requires that, throughout the remainder of the litigation, including trial, no one may "refer to the Agreement in controversy as anything but 'A Joint Venture Agreement.'" The sanction's language shows that its effect on KBR's ability to mount a defense against Hosto's joint venture claim goes beyond requiring KBR to revert to the First Translation. Besides precluding KBR's reliance on the Second Translation, the Translation Sanction impedes KBR's ability to offer evidence to defend against Hosto's claim that the parties had a joint venture relationship. Notably, the sanction effectively prohibits KBR from offering the certified May 2021 English translation of the Convenio de Asociación, which refers to the agreement as an association agreement, not a joint venture agreement. Since

early in the litigation—including in the amended Rule 91a motion—KBR relied on the May 2021 translation to support its defense that the parties expressly disclaimed a joint venture relationship in the Teaming Agreement. Even if the certified translation was admitted into evidence, KBR would nonetheless be precluded from relying on its "association agreement" language when questioning witnesses, and KBR would be precluded from eliciting testimony from its own witnesses, including those involved in the negotiation and execution of the agreement, that the Convenio de Asociación was not a joint venture agreement. Instead, KBR and its witnesses would be required to call the Convenio de Asociación a joint venture agreement. The trial court's order not only handicaps KBR's ability to offer evidence refuting that the Convenio de Asociación is a joint venture agreement, but it also restricts KBR's ability to effectively challenge Hosto's joint venture evidence through cross-examination. And, in its opening and closing statements, KBR will be prohibited from referring to the Convenio de Asociación as the Association Agreement, as it has throughout the litigation. It will instead be required to refer to the agreement as the Joint Venture Agreement, undermining its defense that the parties did not enter into a joint venture relationship.

We conclude that the Translation Sanction would preclude KBR from engaging in a "meaningful adversarial adjudication" of Hosto's claim that the parties had a joint venture relationship, thereby severely compromising KBR's defense

against Hosto's causes of action.[8] *See id.* (holding, in original mandamus proceeding, that trial court's erroneous sanctions order—prohibiting relator from offering evidence, questioning witnesses, or arguing to jury about reasonableness of real party in interest's medical expenses—precluded relator "from engaging in meaningful adversarial adjudication of [real party in interest's] claim for payment of medical expenses, vitiating or severely compromising [relator's] defense" and thus entitling relator to mandamus relief). Therefore, we hold that KBR does not have an adequate remedy by appeal for the Translation Sanction. *See id.*

## 2. *Sanctions Denying Motions*

We next determine whether KBR has an adequate remedy by appeal for the trial court's sanctions denying KBR's motion for summary judgment, its motion to strike Hosto's fourth amended petition, and its motion to exclude Hosto's damages

---

[8] Hosto points out that, after the trial court struck the Second Translation at the summary-judgment hearing, KBR's counsel stated that, "regardless of whether the [trial court] consider[ed] the earlier translation of the document or the translation that's attached to our motion for summary judgment, there's still not an issue of fact as to whether there's a creation of a partnership, a joint venture, or a fiduciary relationship." KBR's Counsel also remarked that "just referring to a joint venture agreement alone is not sufficient to create a joint venture." Hosto suggests that counsel's comments indicate that the Translation Sanction did not compromise KBR's ability to defend it itself. However, when counsel made these comments the trial court had not yet imposed the Translation Sanction, which, as discussed, stifled KBR's ability to present evidence, cross-examine Hosto's witnesses, and offer argument defending against Hosto's claim that the Convenio de Asociación was a joint venture agreement. Thus, counsel's comments do not support Hosto's argument that the Translation Sanction did not significantly compromise KBR's defense.

experts. Hosto asserts that the trial court's denials of KBR's motions were not sanctions but were instead substantive rulings on the merits of the motions. As support, Hosto points out that the merits of the motions were discussed at the sanctions hearing. KBR counters that, based on the express language of the sanctions order, the trial court denied the motions as sanctions, not as substantive rulings on the motions.

We agree with KBR. The trial court's order "grant[ed] the following sanctions" and then listed the sanctions, including the trial court's denial of each of the three motions. The order's unambiguous language reflects that the denials of KBR's motions were sanctions, not substantive rulings on the motions' merits.

In evaluating whether KBR is entitled to mandamus relief for these sanctions, we are mindful that the adequacy of an appellate remedy is determined "by balancing the benefits of mandamus review against the detriments." *In re Team Rocket, L.P.*, 256 S.W.3d 257, 262 (Tex. 2008). When evaluating the benefits and detriments, "we consider whether mandamus will preserve important substantive and procedural rights from impairment or loss." *Id.* Applying this standard, we hold that KBR lacks an adequate appellate remedy to challenge the sanctions denying its motions because KBR has "a right to a substantive ruling" on its motions, including its motion for summary judgment, "[which] would, should [it] be granted, avoid the time, expense, and necessity of a trial." *See In re Graham*, No. 09-22-00360-CV, 2022 WL

41

17491810, at \*4 (Tex. App.—Beaumont Dec. 8, 2022, no pet.) (mem. op.) (holding that relators had inadequate remedy by appeal for trial court's failure "to issue substantive rulings" on their motions for summary judgment because relators had right to ruling on their dispositive motions). Granting mandamus relief will preserve KBR's right to a ruling on its motions because it will provide the trial court with an opportunity to rule on the motions' merits. *See id.*

### 3.    *Sanction Prohibiting Further Motions*

The trial court also sanctioned KBR by prohibiting it from filing "further Motions for Summary Judgment, Motions to Strike Experts or motions that rehash the matters ruled upon" by the trial court in the sanctions order. We agree with KBR that there is no adequate remedy by appeal for this sanction.

As support, KBR relies on this Court's decision in *Kahn v. Garcia*, 816 S.W.2d 131, 134 (Tex. App.—Houston [1st Dist.] 1991, orig. proceeding). There, the trial court imposed a sanction precluding the relator from filing or presenting, directly or indirectly, any further motions in the case, other than responding to motions filed by the defendants. *Id.* at 132. In the mandamus proceeding, we observed that a party precluded from filing motions "is effectively denied the means to communicate with the court," and we determined that the sanction was not "just" because it was "in derogation of a clearly established legal right." *Id.* at 133–34. We held that, by prohibiting the filing of further motions, the relator would be denied an

adequate remedy by appeal, recognizing that the sanction could affect the relator's ability to preserve appellate error. *See id.* at 134. We conclude that the sanction would have a similar effect here. For instance, the sanction would prohibit KBR from challenging Hosto's damages experts at trial, thus precluding KBR from preserving error on that issue for appeal. We hold that KBR has no adequate remedy by appeal for the sanction prohibiting it from filing further motions "rehashing" matters. *See id.*

### 4. Sanction Closing Discovery

In the sanctions order, the trial court stated, "Discovery in this case is now closed." The parties dispute whether that statement constituted a sanction closing discovery—as KBR claims—or whether it was simply a statement noting that discovery had previously been closed—as Hosto claims. Hosto correctly points out that, pursuant to the docket control order, the trial court had closed discovery two months before it signed the sanctions order. Nonetheless, we agree with KBR that the literal reading of the order leads to the conclusion that the trial court sanctioned KBR by closing discovery. The trial court may have issued the sanction to prevent KBR from later filing a motion to reopen discovery because, once included as a sanction, the matter of discovery would have been subject to the final sanction prohibiting the filing of motions "[to] rehash the matters ruled upon by [the trial court]" in the sanctions order. In any event, because the discovery sanction would

disallow discovery that could then never be made a part of the appellate record—thereby denying an appellate court the ability to evaluate the effect of the trial court's error—KBR has no adequate appellate remedy for the sanction.[9] *See Walker*, 827 S.W.2d at 843–44.

## Conclusion

We conditionally grant KBR's petition for writ of mandamus and order the trial court to vacate its December 30, 2022 sanctions order, as modified by its February 21, 2023 order. We are confident that the trial court will comply, and our writ will issue only if it does not.[10]

Richard Hightower
Justice

Panel consists of Justices Kelly, Hightower, and Guerra.

---

[9] We note that, under the trial court's docket control order, discovery will remain closed even after vacatur of the sanctions order.

[10] We lift the stay of trial imposed by this Court's June 1, 2023 order.

44